## HENRY E. HUCKABY v. THE STATE.

### No. 2852.　Decided February 17, 1904.

**1.—Forgery—Indictment—Purported Act of Another.**

Unless there be a similarity of names, it is not necessary in an indictment ment for forgery to allege that the forged instrument purports to be the act of another than the accused. Following Thurman v. State, 25 Texas Crim. App., 366; Webb v. State, 39 Texas Crim. Rep., 534.

**2.—Same—Explanatory Averments.**

If the instrument alleged to have been forged does not on its face import an obligation and yet may be the subject of forgery, this should be shown by extrinsic and explanatory averments in the indictment. Following Cagle v. State, 39 Texas Crim. Rep., 112.

**3.—Same—Lifetime of Declarant—Death Should Be Alleged.**

If a will could not be forged during the lifetime of the purported declarant, but might become the subject of a prosecution for knowingly having come into possession of accused with intent to pass it as true, after declarant's death, then the death of the said declarant must be alleged and proved.

**4.—Same—Will Not Subject of Forgery During Life of Declarant.**

Under our present statute a will is not the subject of forgery during the life of the purported declarant.

**5.—Cases Distinguished and Reviewed.**

See opinion for cases reviewed and distinguished: · Anderson v. State, 30 Texas Crim. App., 595; Ruddy v. State, 58 S. W. Rep., 1007; Webb v. State, 39 Texas Crim. Rep., 534; Johnson v. State, 9 Texas Crim. App., 249.

Appeal from the District Court of Freestone. Tried below before Hon. L. B. Cobb.

Appeal from a conviction of uttering or passing as true a forged instrument in writing; penalty, two years imprisonment in the penitentiary.

There is an agreement in this case that the facts proven upon the trial will warrant a conviction, provided the instrument upon which the for-

gery is alleged is the subject of forgery; the appellant contending that the said instrument being a will was written during the lifetime of the testator or declarant, and further that the law providing for the execution of wills requires that the will must be duly admitted to probate, etc., before it can have any legal effect.

*H. B. Daviss,* for appellant.—An instrument not complete within itself, and which will not of itself—if the same were true—create, increase, diminish, discharge or defeat a pecuniary obligation or transfer or in any manner affect any property whatever, is not the subject of forgery.

The defendant, Henry E. Huckaby, can not be legally convicted of "unlawfully and knowingly and fraudulently having in his possession, with intent to use and pass the same as true, a false and forged instrument in writing," when such instrument is not the subject of forgery. Caffey v. State, 36 S. W. Rep., 82, and authorities there cited; Cagle v. State, 44 S. W. Rep., 1087; Head v. State, 72 S. W. Rep., 394.

The doctrine of this State is, that "an instrument, to be the subject of forgery, must be such that if genuine it will create a valid obligation; and where it is not complete so as to create an obligation, as where something remains to be done to make it a valid legal obligation, or to give it legal effect (as for instance, admitting a will to probate), such instrument is not the subject of forgery." Nor could the defendant, Henry E. Huckaby, be convicted for "unlawfully and knowingly and fraudulently having in his possession, with intent to use and pass the same as true, a false and forged instrument in writing," where such conviction is based upon such an instrument. King v. State, 57 S. W. Rep., 840. Dissenting opinion and authorities cited.

If an instrument is absolutely and everywhere inoperative without certain formalities, then falsely to make or utter it is not forgery. Nor could such an instrument be made the basis of a conviction for "unlawfully and knowingly and fraudulently having in his possession, with intent to use and pass the same as true, a false and forged instrument in writing." Daud v. State, 31 S. W. Rep., 376. The failure of conformity to the requirements in the execution of wills being cited as an instance of an insturment not the subject of forgery. Munoz v. State, 50 S. W. Rep., 949. The instance of failure to enumerate census at the right time being here cited. Johnson v. State, 51 S. W. Rep., 382, dissenting opinion; the instance of the failure to properly acknowledge a deed to wife's separate property being here cited.

The mere writing of the formal words of a will, while the testator is still alive, does not constitute the offense of forgery. A will must be executed in the particular manner and attended by the particular formalities provided by statutes. A will can only become operative after the death of the testator. Arts. 1842, 1884, 1904, 1936, Rev. Stats., 1895. The application for the probate of a will must be made in the manner required by law. Arts. 1883, 1884, Rev. Stats. 1895.

A will must be filed in the probate court or the reasons why it can not be produced must be legally accounted for. Arts. 1885, 1886, Rev. Stats. 1895. There must be a citation properly issued and served. Arts. 1889, 1890, 1894, Rev. Stats. 1895.

A written will can have no legal effect even after all these formalities have been complied with, for it must be properly admitted to probate and it can not be admitted to probate until it has been proved as required by law. Arts. 1900, 1901, 1904, 1905, 1906, Rev. Stats. 1895. Then the order of the probate court must formally decree that the will be admitted to probate, and said order and decree must be entered upon the minutes of the probate court together with the record of the will, the application for its probate and all testimony relating thereto. Arts. 1907, 5351, 5352, Rev. Stats. 1895.

Nor yet is this all that is necessary to be done in the case at bar, before the written will in question can be made to have any legal effect whatever. But in addition to all these requirements heretofore mentioned, both the subscribing witnesses being legatees, one or both of them is required by law to renounce his inheritance under the will, otherwise it would be absolutely void. Arts. 5348, 5349, Rev. Stats. 1895.

A written will can not become operative or "take effect and be valid and effectual as a deed of conveyance of property" until after all the requirements laid down for its execution in title 110, Rev. Stats. 1895, and all the requirements for the manner of its admission to probate laid down in chapters 4, 5 and 6, title 39, Rev. Stats. 1895, have been complied with. Arts. 5354, 5355, title 110, chapters 4, 5 and 6, title 39, Rev. Stats, 1895.

*Howard Martin,* Assistant Attorney-General, for the State.—The real and only question presented in this bill is, is the instrument set out in the indictment subject to forgery; and if so, under which article of the statute is it an offense? The State submits that the instrument set out in the indictment is the subject of forgery; that it comes within the meaning of articles 530, 537, Penal Code. Article 530, Penal Code, provides that, "if the false instrument so made would have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred or in any manner affected any property whatever, it is the subject of forgery." It will be observed that he will in this case appoints an executor; and it follows as a matter of law that the executor is entitled to commissions. This created a pecuniary obligation against the estate of the testator, if the instrument was genuine. Article 537, Penal Code, provides that, "by an instrument which would have transferred or in any manner have affected property, is meant every species of conveyance and undertaking in writing which supposes a right in the person purporting to execute it, to dispose of or change the character of the property of every kind, and which can have such effect when genu-

ine." The instrument in question is subject to forgery by virtue of this article.

HENDERSON, Judge.—Appellant was convicted of uttering or passing as true a forged instrument in writing, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

Appellant made a motion to quash the indictment on several grounds, which was overruled by the court. In order to present the matter, we will set out the charging part of the second count, under which appellant was convicted, to wit: That Henry Huckaby, on or about October 21, 1898, "did then and there unlawfully and knowinngly and fraudulently have in his possession, with intent to use and pass the same as true, a false and forged instrument in writing, to the tenor following: 'In the name of God, Amen. I, Bry Huckaby, of Dew, Texas, Freestone County, do hereby make, publish and declare this my last will and testament, hereby revoking any and all wills heretofore made by me. First. I direct my executors hereinafter named, to pay my funeral expenses, and all my just debts and liabilities as soon as can be done after my decease. Second. I give and bequeath to my son, Bry, and daughter Mary's heirs, exccutors, administrators and assigns forever, two-thirds of my real estate, except my grandson Henry, who is exempted. Third. I give and bequeath to my wife Easter, the remaining one-third of my real estate, the same to contain my dwelling house and the improvements around the same. Fourth. I further agree to give my wife Easter all of my personal property after my debts and other liabilities are paid. Fifth. I hereby appoint my wife, Easter, executrix, and my son, Bry, executor, of this my last will and testament. In witness whereof I have hereunto subscribed my name and affix my seal, this 2nd of July, 1897. Bry $\overset{his}{\underset{mark}{\times}}$ Huckaby. (Seal.) Signed, sealed and published and declared by the said Bry Huckaby, as and for his last will and testament, of us, who at his request in the presence of him and of each other have hereunto subscribed our names as witnesses. Mary Wilson of Corsicana, Texas. H. E. Huckaby, Luna, Texas.' Against the peace and dignity of the State."

Appellant insists that the indictment should have been quashed, because it is not alleged in said count that it purported to be the act of Bry Huckaby; that is, the act of another person than appellant. As a matter of fact there is no such allegation in the second count, and we are not authorized to bring this allegation forward from the first count. In Anderson v. State, 20 Texas Crim. App., 595, which was a case of forgery, the court appears to hold that this averment is necessary. However, in that case the allegation was contained in the indictment, and the question was not before the court. Ruddy's case, 58 S. W. Rep., 1007, follows the above case; but holds that while it is necessary to allege that the act purported to be that of another than defendant, it is not necessary to state the name of such other person alleged to be forged. In

Webb v. State, 39 Texas Crim. Rep., 534, the court went still further and held in a forgery case, that the indictment need not allege that it was the act of another where the instrument was set out in the indictment according to its tenor. This case cites Thurman v. State, 25 Texas Crim. App., 366, which is authority for holding, in a charge for uttering a forged instrument, it is not necessary to allege that it purports to be the act of another, where the instrument alleged to be forged was set out according to its tenor. From this statement it seems that the authorities on this subject are in a state of some confusion. We believe under our system of pleading that the last two cases announce the correct doctrine. Of course, there might be a case where there was similarity of names between that of the alleged forger and the party whose name is charged to have been forged; and in such case it might be necessary to allege that the forged instrument purporting to be the act of another than the party charged with forging the instrument. We accordingly hold that the indictment is good as to this objection.

Appellant also questions the indictment because it does not import an obligation on its face, and if it was the subject of forgery this should be shown by extrinsic and explanatory averments. It is the rule in this State, where the instrument does not show on its face that it imports an obligation in regard to money or property, but is the subject of forgery, and can be shown to be such by extrinsic averments, that these extrinsic or explanatory averments must be alleged. See Cagle v. State, 39 Texas Crim. Rep., 112; Womble v. State, 39 Texas Crim. Rep., 24; Crawford v. State, 40 Texas Crim. Rep., 344; Colter v. State, 40 Texas Crim. Rep., 165; Black v. State, 42 Texas Crim. Rep., 585. The instrument here, which is charged to be the subject of forgery, is not one of the ordinary instruments used in commercial transactions, such as a note, draft, bond, contract, etc., but purports to be the will of Bry Huckaby. Before this paper could have the effect to create or discharge a pecuniary obligation, or transfer or in any manner affect any property, certain facts would have to be proven; that is, that the alleged testator was possessed of an estate subject to be devised by will. And we also believe, as will be shown hereafter, it would have to be proven that he was dead at the time of the alleged forgery. None of these matters are alleged in the indictment. We believe it was defective on this account. We understand it to be conceded in the statement of facts that the testator was alive at the time of the alleged forgery; nor is there anything in the agreement that he has since died. The agreement appears to indicate that he was still living at the time of the prosecution.

Appellant insists that, under these circumstances, the alleged instrument purporting to be the last will of Bry Huckaby could not be the subject of forgery, and per consequence could not be held for passing or uttering as a forged instrument. In Johnson v. State, 9 Texas Crim. App., 249, it is held that although an instrument may not be the subject of forgery at the time it is made, yet if subsequently a law is passed which makes such an instrument forgery, and it is subsequently uttered, a pros-

ecution for passing the same as true may be sustained. If it be conceded that this decision announces a sound doctrine, and is applicable to a case of this character, then it would follow, if the will could not be forged during the lifetime of Bry Huckaby, but it might become the subject of prosecution for knowingly having same in possession with intent to pass it as true after his death; in such case the death of said Huckaby must be alleged and proven in order to sustain a conviction. The death of said Huckaby is not shown in the agreement, and consequently there can be no illegal uttering of the will, much less having same in possession, with intent to utter; as we believe no one will contend that the will had any legal efficacy to affect property during the lifetime of the alleged testator, and could only affect property under certain formalities after his death. Rev. Civ. Stats., arts. 53, 54, 55, 1842, 1884, 1904, 1906, 1905, 1907. The above cited articles show statutory formalities which must be observed in order to give a will any legal efficacy or standing for the purpose of transferring or affecting property.

However, the most important question raised by appellant is that, under our statute, a will is not the subject of forgery during the life of the declarant. In England, as we understand the authorities, it is distinctly held that forgery can be committed by falsely making the will of a living person. See 2 Russell on Crimes, 748. We are cited to a number of cases in the text writers which support this view; but the cases cited are mostly if not all English cases. These cases would only be persuasive if under a definition of forgery similar to our statutory definitions of that offense. But, as we understand the English or common law definition of forgery, the instrument must be such that, if genuine, it would be apparently of some legal efficacy (2 Bishop Crim. Law, sec. 523); and it is not necessary, as under our statute, that the instrument must be such that, if the same were true, it would have created, diminished, discharged or defeated any pecuniary obligation, or would have transferred or in any manner have affected any property whatever; the injury intended must be such as to affect one pecuniarily or in relation to his property. See arts. 36, 37, Penal Code. It will be noted that all the provisions of our statute are used in the past and the present tenses; that is, the language is, "would have created," "would have transferred," and do not depend on some future contingency in order to give them legal efficacy. Now, can it be held that the will, if genuine, during the lifetime of the testator would have the effect, in presenti, to create or discharge any pecuniary obligation, or to transfer or affect any property whatever. It is essentially ambulatory during the lifetime of the declarant, subject to his revocation at any time, and can not possibly take effect until his death. Being such an instrument we hold that it is not the subject of forgery, where the making of the instrument occurs during the life of the testator. It is hardly necessary to observe that all our offenses are purely statutory; and the statute must clearly define and cover the offense before a prosecution can be maintained. We can not have recourse to the common law to make out an offense. Rogers v. State, 8 Texas Crim. App., 400. As

in our forgery law, defects in the past have been discovered and amended by the Legislature, so as to embrace matters not theretofore criminal, we here call the attention of the Legislature to this matter in order that the statute with reference to forgery may be amended so as to embrace wills, if deemed necessary.

For the errors discussed, the judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*

BROOKS, JUDGE (Dissenting.)—I do not agree with the opinion of the majority reversing and dismissing this case, and will state my views.

Appellant insists that the indictment is defective, because the will was written during the lifetime of the testator, Bry Huckaby, and could have no legal effect until probated after his death; hence it was of itself void and of no legal effect, and would not, if true, have created, increased, diminished, discharged or defeated any pecuniary obligation; nor would it have transferred or in any manner have affected any property whatever; and was therefore not the subject of forgery, as required by law. And because the said will alleged to have been forged plainly shows upon its face that it is not a proper instrument to be admitted to probate in this, that the two subscribing witnesses thereto each have an inheritance under and by virtue of said pretended will, and said will could not be admitted to probate and otherwise be made to have any legal effect whatever, until one or both of said witnesses should renounce and relinquish his said interests thereunder; and hence said will is void. I will discuss these propositions in their converse order. Article 5348, Revised Civil Statutes, provides: "Should any person be subscribing witness to a will, and be also a legatee or devisee therein, if the will can not be otherwise established, such bequest shall be void, and such witness shall be allowed and compelled to appear and give his testimony in like manner as if no such bequest had been made. But if in such case the witness would have been entitled to a share of the estate of the testator had there been no will, he shall be entitled to so much of such share as shall not exceed the value of the bequest to him in the will." Article 5349 provides: "In the case provided for in the preceding article, such will may be proved by the evidence of the subscribing witnesses corroborated by the testimony of one or more other disinterested and credible persons, to the effect that the testimony of such subscribing witnesses necessary to sustain the will is substantially true, in which event the bequest to such subscribing witness shall not be void." These two articles dispose of appellant's contention that the will is void because the legatees in the will are subscribing witnesses, since said articles show that the will is not void by reason of said fact.

As to the other proposition. The agreed statement of facts shows that appellant was guilty of having in possession the forged instrument alleged, if the will is the subject of forgery during the lifetime of the testator.

Article 530, Penal Code, provides: "He is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever." Article 537: "By an instrument which would have transferred or in any manner have affected property, is meant every species of conveyance, or undertaking in writing, which supposes a right in the person purporting to execute it, to dispose of or change the character of property of every kind, and which can have such effect when genuine."

In order to ascertain the meaning of the above articles, it becomes necessary to review the common law on this question, and to ascertain therefrom by judicial construction, which the statutes expressly authorize, the legislative intent in enacting these articles, and as to whether these articles cover the forgery of a will, testator still living. Bishop Crim. Law, sec. 603, sub. 2, vol. 2, says: "It does not impair the criminality of forging a will that the supposed testator is living." Russell on Crimes, vol. 2, pp. 749-751, states: "The doctrine is established by several cases, that forgery may be committed by the false making of an instrument purporting to be the will of a person who is still living; notwithstanding the objection that during the life of a party his will is ambulatory, and can have no validity as a will until his death. Thus, a prisoner was convicted of forging a seaman's will, who, it appeared, was still alive, and had returned to England two years after the prize money had been received by the prisoner, under a forged will. (Citing Murphy's case, 10 St. Tri., 183, Hagr. ed.; 2 East P. C., chap. 19, sec. 43, p. 949.) In a subsequent case, where the prisoner was indicted for forging the last will and testament of a woman who was still living, and was a witness on the trial, and convicted, the judgment was respited upon a doubt whether the supposed testatrix was living, the prisoner was legally convicted of having forged her last will and testament; there being no such instrument as a last will and testament, in contemplation of law, until after the death of the person making it; but the judges are said to have been unanimously of opinion that an instrument may be the subject of forgery, although in fact it should appear impossible for such an instrument as the instrument forged to exist, provided the instrument purports on the face of it to be good and valid, as to the purposes for which it was intended to be made. The point was again referred to the consideration of the judges, in a case where the prisoner was indicted and convicted for knowingly uttering and publishing as true a certain false and forged will and testament of one J. G., late a seaman belonging to a merchant vessel, etc., and it appeared that the said J. C. was living. All the judges held that the conviction was right. It was observed by the learned judges who delivered their opinion, that every will must be made in the lifetime of the party whose will it was; that it existed as a will in his lifetime,

though it did not take effect till his death; and that the making of a false instrument importing on the face of it to be a will, was equally forgery, whether the person whose will it purported to be were dead or alive at the time of making it. That a contrary doctrine would operate as a repeal of the law; for if the act of making the will were not forgery at the time, a publication afterwards would not make it so. Buller, J., thought the very definition of forgery decided the doubt, for it was the making a false instrument with intent to deceive; and that here the intention to deceive had been established by the jury, and the instrument purporting to be a will was clearly false. On an indictment for forging a will, the probate of that will unrevoked is not conclusive evidence of its validity so as to be a bar to the prosecution. The same author says that it was an offense to probate the will of a nonexistent person. Patteson, J., in passing on the question, said: 'There is nothing to limit the offense to the forgery only of the wills of persons that have existed, and it has been expressly held that forgery may be committed by the false making of the will of a living person.'"

In Archibald Crim. Prac. and Plead., vol. 2, p. 1639, we find this language: "Will, testament, codicil, or testamentary writing may be described in the indictment as a certain will, or a certain will and testament, or a certain codicil to a will, without saying of whom or the date or other particulars. Forgery may be committed of the will of a person who is alive; or the will of a person who never existed. Where upon indictment for forging a will, the prosecutor in the course of his evidence put in and proved 'the probate, and it was thereupon objected for the prisoners that this, whilst unrevoked, was conclusive evidence that the will was genuine and valid. Garrow, B., overruled the objection, and the prisoner being convicted, the judge held the conviction to be right."

Mr. Wharton in his excellent work on Criminal Law, sec. 682, says: "It need scarcely be said that whatever falls under the heads of bonds, deeds, commercial paper, or receipts and kindred writings may be the object of forgery at common law. For the purpose of detail enumeration, however, it may be mentioned that the principle has been specifially applied to bonds, deeds, to commercial paper of all kinds, to wills, etc.; and in fine to all written or other instruments which may be the foundation of a suit against another." Section 695 of the same work states: "A man may be convicted of forging the will of another who is still alive, as upon the latter's death, the will being genuine would be the basis of legal procedure." Section 714 says: "The fact that no person is at the time legally in a situation to be defrauded by the act is no defense, if there is a possibility of such fraud." Again in section 739: "It is not necessary, therefore, to the validity of the indictment that the forged instrument should appear to be one which could be used immediately as legal proof; it is enough if it can be so used at some future period. Thus an indictment is good which charges the forgery of a will of a living person, although such will could not be the foundation of legal process until after the death of the person whose name is forged."

In McClain's work on Criminal Law, vol. 2, sec. 744, the common law definitions of forgery, as laid down by Blackstone, are given as follows: "The fraudulent making or altering of a writing to the prejudice of another man's right." Furthermore some English judges have spoken of it, "As the making of a false instrument with intent to deceive, but the deceit must involve danger of pecuniary loss; and it is suggested that the expression, 'with intent to deceive in such manner as to expose any person to loss or the risk of loss,' would accurately express the idea." "Forgery of wills was early recognized as a crime; and it was held to be immaterial that the supposed testator was living, or that there was no such person as the one the instrument purported to be." Section 768 lays it down, "That it is not necessary that the injury be pecuniary; it is sufficient that the intention be to deprive the other of a legal right."

In Scott v. State, 48 S. W. Rep., 524, it was held that the intent to injure or defraud is only necessary; that the act need not injure. See also Howell v. State, 37 Texas Crim. Rep., 591. And again in Lasseter v. State, 35 Texas Crim. Rep., 540, it was said that the deed, although not acknowledged, is the subject of forgery, though it may be necessary subsequently to take steps to make it valid.

In view of the above excerpts from the common law and authorities of this court, I will proceed to discuss the statutes of forgery as contained in our Penal Code. Would the forged will of a person still living come within the provisions of these articles? It will be noted from the above excerpts that it was so at common law. It will be noted that the intent to injure is the gravamen of the offense, even under our own authorities, as well as the common law. It will be noted from one of the above excerpts from the common law that the courts have held that wills are the subject of forgery under ordinary statutes similar to our own. If this forged will were a valid instrument, it would have transferred or in a manner have affected the property of the testator. Therefore, I believe that it was the subject of forgery, regardless of the testator being dead or alive; and, therefore, that appellant's contentions are not correct. Certainly if this instrument had been true, and had not been revoked by the testator or supposed testator at his death, the same would have transferred and to a large extent would have affected the property he might have left, and would have been a legal method to dispose of and change the title of property of all kinds belonging to the testator. To hold this instrument invalid would be to say there is no law in Texas, as held by the majority, for punishing a person for the forging of a will; and such a construction would lead me to the converse conclusion. Clearly, when the Legislature enacted these statutes they had in contemplation the forgery of wills as well as any other instrument that would change or affect property. This was the common law; and in the light of such construction said statutes were evidently adopted. In view of this fact, I think the clear legislative intent, as well as the words of these articles under consideration, make it imperative on this court to hold that the

forgery of a will of a person living is forgery within the contemplation of our law.

In my opinion the indictment is properly drawn, and charges an offense against the laws of this State; and no error being manifested in the record, I believe the judgment should be affirmed.