WM. WATTS V. THE STATE.

No. 21880. Delivered February 4, 1942.

The opinion states the case.

*Callaway, Wade & Davis,* of Fort Worth, *Starley & Starley,* of Monahans, and *T. A. Scruggs,* of Odessa, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is forgery. The punishment assessed is confinement in the State penitentiary for a term of five years.

It is charged in the indictment that on or about the 22nd day of January, 1940, and anterior to the presentment of this indictment, in the county and state aforesaid, A. F. Luse, Wm. Watts and W. T. Clark, "without lawful authority and intent to defraud, unlawfully, wilfully and fraudulently did make and forge a false instrument in writing purporting to be the act of another, to-wit, the act of one E. A. Brown, and of another

to-wit, Mrs. Maggie A. Brown, which false instrument did then and there relate to and affect an interest in land in the said State of Texas and was then and there so falsely made by the said A. F. Luse, Wm. Watts and W. T. Clark in such manner that if the same were true and genuine, it would have affected and transferred the title to certain land in the State of Texas and which false instrument purports to be a deed conveying certain land from E. A. Brown, Mrs. Maggie A Brown and Mrs. A. M. Stallings to W. T. Clark, and is of the tenor following"; then setting out in haec verba a general warranty deed covering approximately 140 acres of land located on the Pecos River in Ward County and being Section 34, Block 1, H. & T. C. Ry. Company Survey, and describing the land by metes and bounds, together with the certificates of acknowledgement by the Notary Public, etc.

Appellant's main complaint is directed against the sufficiency of the evidence to justify and sustain his conviction of the offense charged.

The State's testimony shows that on the 22nd day of January, 1940, John A. Hutchinson, an abstracter, who happened to be in the office of the County Clerk of Ward County, was handed a deed by W. T. Clark with the request that he file it for record. This deed purported to have been executed and acknowledged by E. A. Brown, his wife, Maggie A. Brown, and Mrs. A. M. Stallings, on the 8th day of September, 1909, conveying to W. T. Clark of Seminole County, Oklahoma, 140 acres of land, more or less, located in Ward County, Texas, being out of the southwest end of Section 34, Block 1, of the H. & T. C. Railway Survey, followed by a description of the land by metes and bounds.

The State's testimony further shows that E. A. Brown and his family owned a 40-acre tract in about the middle of Section 34, where he had an adobe house and where he lived with his family until his death in 1909; that Brown was a small man of dark complexion; that he and Mrs. Brown had a number of children, the oldest of whom was a boy named Lester; that after Mr. Brown's death the family remained on the place for a while and then moved to Buena Vista, where Mrs. Brown died in 1912.

It was shown that the deed in question was written on a form prepared by The Dorsey Company of Dallas, Texas. It

was also shown that prior to July, 1911, this company did business under the corporate name of The Dorsey Printing Company but in July, 1911, it changed its corporate name to The Dorsey Company. The corporate name of The Dorsey Company appears printed on the form of the deed.

It was also shown that J. Decker, the Notary Public who apparently took the acknowledgments of the grantors to the deed in question died in the year 1912.

Mr. W. A. Weaver, an expert on handwriting, testified that he examined the written deed purporting to have been executed by E. A. Brown, Mrs. Maggie A. Brown, and Mrs. A. M. Stallings, dated September 8, 1909; that he compared the same with the genuine signatures of Mr. and Mrs. Brown; that in his opinion the deed was not executed during the year 1909; that he reached this conclusion from the fact that the ink did not appear to be old. It had not begun to show its age; and the typewriter used in writing the instrument was a Remington and had a style of type which was not in use by that company in 1909, but became in use after 1925. He testified that the only signature of the purported grantors which was genuine was that of Mrs. Stallings, but that it was not written in 1909 because of the great dissimilarity of her signature in 1909 and 1939. It was shown to have been written after 1909.

Mrs. Walter Brown testified that Mrs. A. M. Stallings was her mother and that she died on the 23rd of December, 1940; that she knew A. F. Luse; that she saw him at her mother's home about the 22nd day of January, 1940; that her mother at that time was 82 years of age and was very feeble; that the name of Mrs. A. M. Stallings signed to the deed is in the handwriting of her mother; that the first time she saw the deed it was in her mother's room along about in September, 1939.

John A. Hutchison testified that on the 22nd day of January, 1940, W. T. Clark delivered to him a deed with the request that he have it recorded and at the same time handed him a dollar with which to pay for the recording fee; that William Watts, the defendant, was not present at that time.

It appears from the deed that the appellant and C. E. Holly signed their names thereto as witnesses to the execution thereof by the grantors.

Several documents bearing the genuine signature of E. A.

Brown and his wife, Maggie A. Brown, were offered in evidence for the purpose of comparison of the handwriting.

Appellant testified in his own behalf that in the Fall of 1909 he and Luther Mann had arranged to make a trip to Pecos and Toyah for the purpose of investigating and looking at some land which was said to be in an irrigation project. They wanted to look at those lands, and he became acquainted with a man by the name of W. T. Clark; that Luther Mann introduced Clark to him and that Clark went with them; that they went out there on the train in 1909. They went to Toyah and covered quite a great deal of territory on the trip. From Toyah they went to Pecos and stayed there a short time. They then went on to Grand Falls, where they looked at some land and talked to various people. On this trip W. T. Clark bought some land and Luther Mann had something to do with bringing about the sale. At that time appellant witnessed a deed and signed his name thereto as a witness. The people who executed that deed were Mr. Brown and his wife and Mrs. Stallings. It was executed in the office of the Justice of the Peace at Grand Falls; that the people who signed the deed were present at the time and he and another man were asked to sign the same as witnesses; that he did not know the grantors before that time; that he did not know any of the parties who signed the deed prior to the time that he saw them. The Justice of the Peace was there and took their acknowledgements in his presence. The State's Exhibit No. 1, which appears to be a photostatic copy of the deed made in 1909, appears to be a copy of the same deed which he signed as a witness on that occasion. Appellant testified that the next time he saw W. T. Clark was in January, 1940, at his (appellant's office in Odessa, Texas; that he talked to Clark there for a period of two or three days as he was in and out of his office; that when he first saw Clerk, who had made himself known, he recognized him; that after the second or third day, Clark showed him a deed which he had and he noticed that his (appellant's) signature was on it; that they began to talk about the trip to Pecos, Toyah and Grand Falls in 1909. He did not remember how long Clark stayed around Odessa at that time but it was probably four or five days; that he had not seen Clark since that time; that when he saw him in 1909 Clark was a man approximately 40 or 50 years of age; that when he saw him in January, 1940, he appeared to be a man in his late seventies. Clark appeared to be a man five feet, ten inches tall and weighing approximately 150 pounds. Appellant said he did some

notary work for Clark at the time he was there. Appellant stated that in the fall or late summer of 1939, he became acquainted with A. F. Luse; that he did not know where Clark was at the present time; that he had not seen him since 1940, when he visited him at his office; that he signed the deed in question as a witness, which was in September, 1909, at Grand Falls; that at the time when they were at Grand Falls in 1909, they looked over several tracts of land the upshot of which was that Luther Mann and "these other parties" finally sold Clark a tract of land which, in his opinion, is the land described in the deed; that he went back in 1940 with the same W. T. Clark and looked over these lands. He did not remember whether they had derricks on them at that time or not, but he believed there were probably some small producing oil wells on the lands at that time.

Appellant offered a number of witnesses to show that a man by the name of W. T. Clark operated in and about Fort Worth.

Mrs. McCracken, who resided at Odessa, testified that she first met W. T. Clark about 1901; that the next time she saw him was when he came through Odessa in 1909 or 1910; that he came back in 1940. She testified that she knew A. F. Luse and had known him since 1939.

John T. Honea testified on behalf of the defendant that he met Clark in 1903 and that he saw him in Wise County in 1910; that he saw Clark in 1914 in Fort Worth; that he saw him again in 1918; that in 1922 Clark came to the witness' office in Fort Worth and left with him a deed conveying certain land located on the Pecos River near Grand Falls in Ward County, which document had attached thereto a map. Clark left the deed with the witness until 1924, when he handed it back to him; that he had not seen Clark since and did not know where he was; that a photostatic copy of the deed offered in evidence appears to be a copy of the deed which Clark left with him in 1922.

That the deed in question was forged seems to us to be shown by the fact that it was not signed and acknowledged by the grantors during their lifetime because it was written on a form made by The Dorsey Company, which company did not begin to do business under such name until July, 1911. Moreover, there is evidence to the effect that the deed was written on a Remington typewriter which had a different kind of

type from that which those machines had in 1909; and the signatures of the grantors, Mr. and Mrs. Brown, were made with ink which did not disclose any age but appeared to be of recent origin. Consequently the next question which presents itself is whether or not the evidence is sufficient to connect appellant with the act charged. If this deed was not signed and acknowledged in 1909 by the grantors but was made subsequent to July, 1911, then appellant and Holly did not sign the same as witnesses at that time but subsequent to July, 1911, after Mr. Brown had been dead for nearly two years. Under Article 1010, P. C., it is "only necessary to prove that the person charged took one step, or did any one act or thing in the commission of the offense, if from such step, act or thing any of the intentions hereinbefore mentioned, or any other fraudulent intention, may be reasonably inferred" etc.

It will be noted that during the trial there appeared a little mute witness, (The Dorsey Company) who, like a shining light, suddenly appeared on the horizon of West Texas and cast its illuminating light upon the entire transaction, disclosing its infamy in its natural nude form, to the great bewilderment and astonishment of its perpetrators.

We think that the evidence in this case meets the requirements of the statute above cited.

Appellant, by motion in arrest of judgment in the trial court, challenged the sufficiency of the indictment on the ground of an incongruity between the tenor clause and the purport clause thereof. For a clear understanding of appellant's contention we here refer to the indictment heretofore set out. The indictment sets out the deed in haec verba, which shows, by its granting clause, that E. A. Brown and wife, Maggie A. Brown, and Mrs. A. M. Stallings, are the grantors, and the deed appears to be signed and acknowledged by them. The names of Wm. Watts (the appellant) and C. E. Holly appear thereon as witnesses to the signatures of the grantors. It further appears therefrom that each of the grantors acknowledged the deed before J. Decker, a Notary Public in and for Ward County, Texas. The certificates of acknowledgement purport to have been made by J. Decker, the notary.

It seems to be the well-established rule in this State that where the instrument in writing alleged to be forged is set out in the indictment by its tenor, it is not necessary to allege that

it purports to be the act of another; nor is it necessary to allege whose act it purports to be when it is apparent from an inspection of the face of the indictment that it does not purport to be the act of the defendant only. However, when the indictment contains a purport clause it must correspond with the tenor of the instrument charged to be a forgery. See Westbrook v. State, 23 Tex. Cr. App. 401; Gibbons v. State, 36 Tex. Cr. R. 469.

In the instant case, we find that the purport clause concludes with the following language:

" * * * and which said false instrument purports to be a deed conveying certain land from E. A. Brown, Mrs. Maggie A. Brown and Mrs. A. M. Stallings to W. T. Clark," etc.

It is apparent from the foregoing language that the indictment charged that the instrument was false in so far as it purported to be the act of Mr. and Mrs. Brown, but that said false instrument purports to be a deed conveying land from E. A. Brown, Mrs. Maggie A. Brown, and Mrs. A. M. Stallings to W. T. Clark, and this was in consonance with the tenor clause in the indictment. We do not think that there is such incongruity in the indictment as vitiates the same or that appellant was misled thereby.

In the case of Webb v. State, 39 Tex. Cr. R. 534, it appears that Webb made a note in the sum of $82.50, payable to the Dublin National Bank on May 29, 1897, with interest thereon from maturity at the rate of 10% per annum, and signed not only his name thereto but that of J. R. Rucker and S. E. Drake. The name of Webb to the instrument was genuine but those of Rucker and Drake were forgeries. The appellant in that case, upon conviction, filed a motion in arrest of judgment because the indictment failed to charge an offense and also failed to charge that said instrument was the act of another, etc. Judge Henderson, speaking for the court, in disposing of the question said:

"While the statute requires, before the offense of forgery can be committed, it must purport to be the act of another, it is not necessary, in charging forgery, to set out the purport of an instrument, or by whom it purported to be signed. It is simply sufficient to set forth the instrument by its tenor. It is not claimed that the name of 'J. N. Webb,' the defendant, was forged to the instrument; but the forgery, as shown by the

proof, consists in signing the names of J. R. Rucker and S. E. Drake to said instrument, following the name of Webb. * * * That the signature of said instrument purported to be the act of another than the said Webb sufficiently appears by the allegation that the instrument bearing said signatures was forged by the said Webb,—not that he forged his own name thereto, but that he forged the names of one or both of the other parties thereto."

In the present instance, there seems to be no difference of opinion between us and appellant as to the principle of law applicable here. The only difference is in the construction placed on the indictment by appellant and that placed thereon by us.

He seems to take the further position, if we understand his contention correctly, that since the deed in question not only purports to be the act of Mr. and Mrs. Brown and Mrs. A. M. Stallings, but also of J. Decker, the Notary Public who took the acknowledgment and made the purported certificate thereto, it was necessary to specifically charge in the indictment that the certificate was a forgery and that since it was also a forgery, there was not any valid privy acknowledgment of Mrs. Brown; that consequently the deed was void, and being void, it could not affect the land. The indictment charged that the appellant, Luse and Clark "without lawful authority and intent to defraud, unlawfully, willfully and fraudulently did make and forge a false instrument in writing," etc., setting out the alleged false instrument in full, including the certificate of acknowledgment. This, in our opinion, was sufficient to charge that the deed, as well as the acknowledgment, was a forgery and was a sufficient basis for the admission of proof in support thereof. The fact that the acknowledgment was a forgery and that it vitiated the deed and made it void was no defense in view of Arts. 1006 and 1010 of the Penal Code, as the same relates to forgery of land titles. See also Roberts v. State, 13 S. W. (2d) 862.

Appellant next complains of the court's action in permitting the State to introduce in evidence a photostatic copy of the alleged forged deed. His contention is that a proper predicate had not been laid for its introduction. We are of the opinion that his position is well taken. The State, for the purpose of laying the necessary predicate, proved by Mr. Leo Brewster, who testified that in the Summer of 1940, A. F. Luse, a co-defendant, delivered the deed in question to him; that he had

photostatic copies made thereof; that he compared the copies with the original and found them to be exact copies; that he then gave the deed back to Luse and had not seen it since. Mr. Hart Johnson testified that he represented H. I. Waid, et al in Cause No. 65, a civil suit pending in the District Court of Ward County; that he took the deposition of the appellant, Wm. Watts; that at that time he had possession of the original deed but he delivered it to Mr. Leo Brewster and had not seen it since. The District Attorney testified that he had not seen the deed at any time. Mr. Neel, the County Attorney of Ward County, testified that he asked Mr. Luse at the time of the trial of this case if he had the original deed and requested Luse to give it to him; that Luse replied, "I do not have it." This seems to be all of the evidence of diligence in locating the original deed. It occurs to us that since the evidence shows that Luse was the person who was last seen in possession of the deed, the State should have inquired of him (when he said that he did not have it) what he did with it. If he had then replied that he had lost it or destroyed it, the predicate would have been sufficient; but if he had replied that he gave it to John Doe, or Richard Roe, the State was then required to make inquiry of them as to what became of it. It is obvious from the foregoing statement that the State did not pursue the inquiry far enough to admit the introduction of secondary evidence. Hence the State did not show that the orginial could not be produced. In 20 Amer. Jur., p. 381, Sec. 428, the rule is stated as follows:

"Photostatic copies of writings are secondary evidence of their contents and, therefore, inadmissible where the original can be produced in court. They are admissible only when a proper foundation is laid for the introduction of secondary evidence."

Moreover, it might be that the co-defendant, who is the grantee in the original deed in question, has possession of the same, and if it were shown that he was but was beyond the jurisdiction of the court and had not been apprehended and could not be located, then we think that under such showing the photostatic copy would be admissible.

In the case of Meredith v. State, 164 S. W. 1019, this court, in discussing the question, quoted from 1 Greenleaf on Evidence, (13th Ed.,) Sec. 560, as follows:

"When the instrument or writing is in the *hands or power*

*of the adverse party,* there are, in general, except in the cases above mentioned, no means at law of compelling him to produce it; but the practice, in such cases, is to give him or his attorneys a regular notice to produce the original. Not that, on proof of such notice, he is compellable to give evidence against himself, but to lay a foundation for the introduction of secondary evidence of the contents of the document or writing, by showing that the party has done all in his power to produce the original."

In the instant case it is not shown that any notice to produce the particular deed was ever served upon the defendants or either of them.

Appellant next complains because the court declined to permit him to prove by the witness Honea that when W. T. Clark showed him the deed in question in the years 1914, 1918 and 1922, that he, on each occasion, asked him (Honea) to help him sell the land. Appellant claims that it was a part of the res gestae and was admissible on the issue of limitation. In our opinion, it did not show, or tend to show, time, which is the essential element on the question of limitation. The witness was permitted to and did testify to the time that he saw the deed in question. Appellant further contends that the excluded testimony was a part of the res gestae and was therefore admissible. What was it res gestae of? Certainly not of the execution of the deed in question, nor of the circumstances leading up to its execution or its delivery to Clark by the purported grantors. It was at best but explanatory of the object of Clark in showing the deed to and leaving it with the witness. While we do not believe that this shows such an error on the part of the court as would of itself require a reversal of the case yet, if, upon another trial, the matter should again arise in the same or similar way, the court should admit the testimony.

All other matters have been carefully considered by us. Some of them may not arise upon another trial and some are, in our opinion, without merit.

By reason of the error in admitting the photostatic copy of the deed without first laying a proper predicate therefor, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.