Alton MINIX, Appellant,

v.

The STATE of Texas, Appellee.

No. 56041.

Court of Criminal Appeals of Texas,
Panel No. 3.

Jan. 24, 1979.

Rehearing Denied April 25, 1979.

R. Leon Pettis, Beaumont, for appellant.

Tom Hanna, James S. McGrath, Dist. Attys., Paul E. Naman, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

Appellant was convicted of the offense of forgery. The jury found him to be an habitual criminal, and the trial court assessed punishment at life. Appellant raised three grounds of error in his original brief, but we find ground of error number one to be dispositive.

The first contention by appellant is that the trial court erred by failing to grant a motion to quash the indictment which alleged in pertinent part:

"that Alton Minix . . . did then and there knowingly, with intent to defraud and harm, forge, by possession with intent to utter the same, a writing as follows:"

A copy of the instrument, a check made payable to "Alton Minix" and signed by "Charles H. Weinbaum," followed the above allegation in the indictment.

The trial court overruled a motion to quash the indictment on the ground that it failed to allege that the act "was done without the consent of the owner or other person entitled to give consent." Although the language of the motion is not as well drafted as it could be, appellant is appar-

ently complaining that the indictment fails to allege that the writing purports "to be the act of another who did not authorize the act" as provided in V.T.C.A. Penal Code, Sec. 32.21(a)(1)(A)(i).[1]

■ It is a well settled rule that when the check is set out *haec verba* in the indictment, the State is not required to allege that the forged instrument purports to be the act of another, so long as the name of the maker is different than the name of the defendant. *Biering v. State*, 159 Tex.Cr.R. 331, 263 S.W.2d 558 (1953); *Watts v. State*, 143 Tex.Cr.R. 303, 158 S.W.2d 510 (1942); *Wisdom v. State*, 122 Tex.Cr.R. 271, 54 S.W.2d 533 (1932); *Huckaby v. State*, 45 Tex.Cr.R. 577, 78 S.W. 942 (1904). See also *Jiminez v. State*, 552 S.W.2d 469 (Tex.Cr. App.1977), in which both the payee and maker were different names than the defendant. However, V.T.C.A. Penal Code, Sec. 32.21(a)(1)(A)(i) requires additionally that the instrument must purport to be the act of another "who did not authorize that act." *Young v. State*, 529 S.W.2d 542 (Tex. Cr.App.1975). In that respect the present forgery statute did not change its predecessor which included "without lawful authority" as "an essential element of the crime of forgery." *Smith v. State*, 162 Tex.Cr.R. 132, 282 S.W.2d 876 (1955).

■ In *Smith* the facts were very similar to the present case. The indictment set out the check in a way that properly "upon its face, purported to be the act of another," but did not allege that the check was made without lawful authority. This Court held that the indictment was fatally defective, and the case was reversed.

We conclude that *Smith* is controlling authority, and failure to allege that the writing purported to be the act of another "who did not authorize that act" rendered the indictment fundamentally defective.

For this reason the judgment is reversed and the cause is remanded.

1. V.T.C.A. Penal Code, Sec. 32.21(a)(1)(A)(i) provides in pertinent part:
   "(a) For purposes of this section:
   (1) 'Forge' means:

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

On original submission appellant successfully challenged the trial court's adverse ruling on his motion to quash the indictment. That motion attacked the failure of the indictment to allege that the act "was done without the consent of the owner or other person entitled to give consent." To the extent that old code cases address this issue, *Smith v. State*, 162 Tex.Cr.R. 132, 282 S.W.2d 876, cited by the unanimous panel on original submission, is on point. The element of forgery under Art. 979, V.A.P.C. (1925) of "without lawful authority" has been brought forward in V.T.C.A., Penal Code Sec. 32.21(a)(1)(A)(i), which requires that the purported maker "did not authorize the act" of making the writing. Not only was the indictment here defective on the basis urged in the motion to quash, but under *Smith* it was fundamentally defective.

■ Although this prosecution was not for forgery by making under Sec. 32.-21(a)(1)(A), it was brought for forgery by possession with intent to utter under Sec. 32.21(a)(1)(C), which by reference expressly incorporates the elements of Sec. 32.-21(a)(1)(A) and (B). Simple use of the word "forge" in the indictment is insufficient to incorporate by reference the missing element. In *Reynolds v. State*, Tex.Cr.App., 547 S.W.2d 590, a similar argument that the allegation of "unlawful" in a theft indictment was sufficient to supply the missing element that appeared in the statutory definition in V.T.C.A., Penal Code Sec. 31.03(b), was rejected:

"The allegation of 'unlawfully' pleads only a conclusion of law omitting the facts necessary to that conclusion."

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:
(i) to be the act of another who did not authorize the act; . . . ."

The State urges that the decision in this case is in conflict with *Jiminez v. State*, Tex.Cr.App., 552 S.W.2d 469, and *Jones v. State*, Tex.Cr.App., 545 S.W.2d 771. The element found missing in the indictment in this case was not expressly considered in those cases. *Jones* discussed failure of the indictment to allege that the accused knew the instrument was forged, and *Jiminez* discussed, inter alia, the purport element. Although the language upholding the *Jiminez* indictments against a purport clause challenge does say that the instrument set out purported to be the "act of another who did not authorize the act," it did so by relying on the "purport" rule that rests on setting out the forged instrument in the indictment in *haec verba*, and failed to address the fact that the "purport" and "unauthorized act" elements are separate and distinct. Furthermore, the *Jiminez* prosecutions were for forgery by making, so that the conflict between the allegation that the accused in fact made the instrument and the appearance from the face of the instrument set out *haec verba* that someone else made it was sufficient to supply the purport element under the *haec verba* rule. No such conflict arises in prosecutions for forgery by uttering or forgery by possessing with intent to utter.

The judgment on original submission is modified to the extent that prosecution under this indictment is ordered dismissed.

The State's *motion for rehearing* is overruled.

CLINTON, Judge, dissenting.

The course this cause has taken is illustrative of transitional difficulties in moving from the ways of the old penal code into the course of the new one. As author of the original panel opinion, I find myself in the anomalous position of supporting the motion for rehearing while other of my Brothers now believe not only that the indictment is defective, but fatally so.[1] But since

that opinion we have discussed and considered substantially the same problem in a variety of contexts and, upon reflection, my best judgment on the matter of determining sufficiency of an indictment generally is that we should not be unduly influenced by earlier treatment of pleadings under statutes preceding and repealed by the new penal code. Rather we must address such issues that are presented with the format, definitions, purposes and objectives of that code firmly in mind. See V.T.C.A., Penal Code Section 1.02(2) and Introduction, 1 V.T.C.A., Penal Code XIII.

In this particular case the indictment is drawn from the "element of offense" requirements of V.T.C.A., Penal Code Section 1.07(a), and the broad statutory statement of the offense with incorporation of the prescribed method or manner by which the underlying facts suggest it was committed. That is, the indictment alleges that the accused did then and there "knowingly, with intent to defraud and harm, forge, by possession with intent to utter the same, a writing as follows: (setting out a copy of the writing)." In rearranged order, the indictment tracks applicable portions of Section 32.21, V.T.C.A., Penal Code:

(b) A person commits an offense if he forges a writing with intent to defraud or harm another.

\* \* \* \* \* \*

(a) For purposes of this section:
(1) "Forge" means:

\* \* \* \* \* \*

(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B) of this subdivision.

An instrument is forged within the meaning of Paragraph (A) if it has been altered, made, completed, executed, or authenticated so that it purports, e. g., "to be the act of another who did not authorize that act."

---

1. Indeed, the opinion of the same panel in *Landry v. State*, (No. 57,533, delivered April 11, 1979) expressly rejects the proposition that omitting the phrase "who did not authorize that act" renders an indictment fundamentally defective. It is obvious that the majority view of the Court is otherwise.

Whatever else they might be called—essential ingredients, necessary elements, constituent elements—it is clear to me that the indictment in this case substantively states an offense to withstand an exception lodged under Article 27.08, V.A.C.C.P., and, further, sets forth in plain and intelligible words the "ultimate facts" constituting the offense, see Article 21.02, V.A.C.C.P., to render it invulnerable to an exception as to form contemplated by Article 27.09, Paragraph 2, V.A.C.C.P. A person who is charged with forging a writing, by possessing it with intent to utter it, with intent to defraud or harm another, has been adequately informed of his offensive conduct. Averring one knowingly, with intent to defraud and harm, possessed a forged writing with intent to utter it, and displaying it informs that the writing purports to be the act of another who did not authorize that act.[2]

The content of the indictment before us was more than enough under old Article 998, V.A.P.C., 1925.[3] *Fifer v. State*, 451 S.W.2d 757 (Tex.Cr.App.1970) and cases cited.

Now that every forgery offense is a species of fraud denounced in Chapter 32, V.A.T.C., Penal Code, the gist of the offense is "intent to defraud or harm" another.[4] *Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex.Cr. App.1977). The new code does not provide a definition of "defraud" or "fraud," but we are directed by Section 1.05(b) to apply certain sections of the Code Construction Act, Article 5429b–2, V.A.C.S., to construc-

tion of the penal code. Section 2.01 of that Act provides in pertinent part:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

On the civil side there is a great body of law on the subject of fraud, and it is to that we may, and I do now, resort to determine what have been held to be ingredients of fraud in aid of our construction of "intent to defraud."

*Anderson v. Paschall*, 60 S.W.2d 1087 (Tex.Civ.App.—Fort Worth 1933), affirmed, *Paschall v. Anderson*, 91 S.W.2d 1050 (Comm.App., Opinion Adopted, 1936) states precisely:

" 'Actual fraud' has a definite meaning in our law. Its distinguishing feature from other types of fraud is the dishonest intention."

For the essence of actionable fraud is not that false representations were intentionally made but that their maker *intended* that they be acted upon—a distinction pointed out in *Wilson v. Jones*, 45 S.W.2d 572, 575 (Comm.App., Holdings Approved, 1931) and reiterated by the court in *Custom Leasing, Inc. v. Texas Bank and Trust Co.*, 516 S.W.2d 138, 144 (Tex.1974).

From the settled meaning of fraud and established rules concerning it in the civil law, I glean that one who intends to defraud by possessing with intent to utter a

---

**2.** In the instant case, the State concedes, as it must, that the "purport" facts must be proved but just because a subsidiary fact must be proved does not, in my view, mean that such a fact is a part of the "everything" that Article 21.03, V.A.C.C.P., indicates should be stated in the indictment. Proof that the writing purports to be the act of another who did not authorize that act is but an evidentiary showing supporting the ultimate fact of intent to defraud and harm. If any reconciliation between Article 21.03, V.A.C.C.P. and other provisions of the Code of Criminal Procedure or of the Penal Code is deemed appropriate, we may accomplish that by holding "everything" in the former refers to the "appearance" on the face of the indictment that an offense has been com-

mitted, "plain and intelligible words" stating the offense and "element of offense" in the latter.

**3.** "If any person shall knowingly have in his possession any instrument of writing, the making of which is by law an offense, with intent to use or pass the same as true, he shall be confined . . . ."

**4.** That statement, written by Judge Tom Davis then as a Commissioner and approved by the Court, was quoted approvingly by Presiding Judge Onion in the unanimous opinion in *Baker v. State*, 552 S.W.2d 818 (Tex.Cr.App.1977), a forgery by passing case.

check that is in fact a forgery commits an offense denounced by Section 32.21(a)(1)(C) and (b). The thrust of the penal prohibition is the fraudulent intent that motivates one to possess a forged writing until an opportunity·to utter it is presented. The dishonest intention is the conscious objective or desire that the person to whom the writing is presented will act on it to the benefit of the presenter and the correlative detriment of another. To form that objective, or hold that desire, one must necessarily have accepted the notion that the writing may not be what it appears to be. But, as in civil fraud, one need not actually know that the writing purports to be the act of another who did not authorize that act. It is enough ˙ that one consciously engage in whatever mental exercise, concerning the facts and circumstances as they are conceived by him to be, is sufficient to conjure up the evil intent to defraud. Thus, short of mental certitude of the false nature of the writing, one may guess, surmise or believe that it is—indeed, one may even be foolhearty enough to act on fond hope. Whatever the psychic processes follow awareness of characteristics of a writing that comes to hand, if the consequence is formulation of an intent to defraud by uttering it, to inform the possessor that the writing purports to be the act of another who did not authorize it is a redundant communication.

Moreover, *again as directed by the Code Construction Act*, we find that the word "utter" has a particular meaning when used in connection with a writing that labels the writing as false or forged. Thus from Black's Law Dictionary, Revised 4th Edition, 1716 we are instructed, "To utter, as used in a statute against forgery and counterfeiting, means to offer . . . a forged instrument, with the representation, by words or actions, that the same is genuine." [5] Thus where, as here, the indictment alleges possession with intent to utter, the

accused is informed that the State claims the accused possessed a false writing he intended to present as true.

What has been demonstrated, then, is that in matters of fraud involving a false representation the ·vice is in the making with intent that it be accepted and relied upon rather than knowledge of the maker that the representation is false and, furthermore, that an allegation of intent to utter a writing provides notice that the writing intended to be passed as true is actually false—the writing purports to be an act that was not authorized. Every aspect of offensive intent in context of forbidden conduct was presented in the indictment in this cause.

Indeed, it may be argued that more was set out than necessary. To elaborate, using the idiom suggested elsewhere, the facts found by the grand jury that are identified in its indictment and thereby communicated to the accused are that on the stated date in the designated location the defendant did:

1. knowingly—you were aware of the nature of your conduct and existence of the circumstances surrounding it;

2. with intent—you had the conscious objective or desire to engage in that conduct or cause the result;

3. to defraud—you meant to induce another to rely on the representations appearing on the face of the writing, one or more of which is false, to the monetary detriment of another;

4. forge—the writing you possessed purports to be the act of another who did not authorize that act;

5. by possessing—you had actual care, custody, control and management of the writing;

6. intent to utter—you meant to present the false writing as true to another in exchange for monetary consideration;

7. a writing—what you possessed was this check displayed here on the face of

---

**5.** The former statutes were couched in terms of "pass" and "use or pass," Articles 996 and 998, P.C., 1925. The new code, however, proscribes "to issue, transfer, register the transfer of, pass, publish, *or otherwise utter*" and to pos-

sess with intent "to utter." Thus, we must ascertain the meaning of "utter" as intended by the Legislature in 1973 rather than the meaning of "use or pass" in the Old Code more than 125 years ago.

this indictment that along with other identifying data bears your name as payee and the purported signature of Charles H. Weinbaum.

In short, by its indictment the grand jury is communicating to the accused that these are the facts as we have found them and that the State, through its prosecuting attorney, expects to prove. Meeting all the statutory requirements, and providing ample notice, the indictment did not suffer the deficiency claimed in the motion to quash.[6] The trial court, therefore, did not err in overruling it.

DOUGLAS, J., joins.

---

6. Erroneously styled a motion to quash, the pleading is actually an exception to form contemplated by Article 27.09, Paragraph 2, V.A.C.C.P., and as such, if sustained by the trial court, the indictment would have been amended in accordance with Article 28.09, V.A.C.C.P., interlining that the purported maker of the writing "did not authorize the act." That amendment would not provide any additional *factual* information to the accused. Thus, denial of the motion did not prejudice "his substantial rights." If the mandate of Article 21.19, V.A.C.C.P. is followed the indictment "shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form . . . ."