## WILSON v. JONES.
### No. 7454.

Court of Civil Appeals of Texas. Austin.
June 25, 1930.

Rehearing Denied July 9, 1930.

Tyler & Hubbard, of Belton and W. B. Weaver and Jas. B. Hubbard, both of Corpus Christi, for appellant.

A. L. Curtis, of Belton, and Jno. B. Daniel, of Temple, for appellee.

BAUGH, J.

We copy from appellant's brief the statement of the nature and result of this suit:

"Appellant filed this suit in the District Court of Bell County, against appellees, E. T. Jones, O. A. Sarvis and Mrs. A. Muhlhause, alleging that Sarvis and Jones sold to him a certain promissory note, purporting to have been executed by Mrs. Muhlhause, and purporting to be owned by Sarvis, Mrs. Muhlhause having denied the execution of the note; and that Jones represented to appellant that he was Mrs. Muhlhause's banker and knew that the signature was her genuine signature, and that if Wilson would buy the note, he, Jones, would guarantee that the signature was genuine; that plaintiff bought the note, relying on Jones's representations and guarantee, and that he did not know that Jones had any financial interest in said note or its proceeds until after he had purchased same; and that Jones and Sarvis divided the proceeds, and that it afterwards developed that the signature was not the genuine signature of Mrs. Muhlhause, and prayed for judgment against Jones and Sarvis for the amount he paid for the note. * * *"

Mrs. Muhlhause was dismissed from the suit during the trial, and at the close of the evidence the court instructed a verdict for the defendants. This appeal is prosecuted against Jones only. Appellant's only contention is that there was sufficient evidence to go to the jury on the issues pleaded.

The evidence showed that on March 15, 1927, A. O. Sarvis, a broker residing in San Antonio, Tex., brought the note in question, then owned by T. C. Marshall, to Bartlett, Tex., where Mrs. Muhlhause lived, for the purpose of selling it. It is agreed that this note was a forgery. Sarvis first approached E. T. Jones and offered it for sale to him or to the bank of which Jones was cashier, at a discount of 10 per cent. Jones declined to purchase the note until he had seen Mrs. Muhlhause. When he presented the note to her, she denied the signature. Jones thereupon returned the note to Sarvis and declined to purchase it, stating at the time that he thought Mrs. Muhlhause had in fact signed it, and suggested to Sarvis that he might sell it to Wilson. Jones told Wilson about the note, introduced him to Sarvis, told him that he had presented the note to Mrs. Muhlhause and that she had denied the signature. According to Jones' testimony, he told Wilson that he believed Mrs. Muhlhause signed the note, it looked like her signature, and she had theretofore denied her signature to other papers which she had in fact signed. Wilson testified that Jones positively guaranteed that it was the signature of Mrs. Muhlhause, and that otherwise he would not have bought the note.

After some conversation between Wilson and Sarvis in appellee's bank, Wilson purchased the note at 10 per cent. discount and gave Sarvis a check for the amount. Sarvis cashed the check and later paid to Jones $450. He testified that Marshall had authorized him to discount the note as much as $1,000, if necessary to sell it; and that because Jones had brought him in touch with Wilson, who had purchased it at a discount of $550, he considered it only fair to pay Jones the other $450. The record wholly fails to show that there was any understanding or agreement between Jones and Sarvis that Jones was to get anything out of the sale of the note to Wilson, or that he was in any manner interested in the sale, or represented Sarvis in the matter. Both Jones and Sarvis testified, without contradiction, to the contrary. Mrs. Muhlhause carried her account in the bank of which Jones was cashier, and he was familiar with the signature.

It is undisputed that Sarvis was a stranger to both Jones and Wilson on the date of the sale of the note; and that Jones and Wilson had never seen nor heard of the note before. All of them knew prior to its sale that Mrs. Muhlhause was denying the genuineness of the signatures of her name on the note. No confidential relationship existed between Jones and Wilson. Wilson had the same opportunity to investigate, after her denial, the genuineness of such signatures as Jones had, but he purchased the note from a stranger without ever consulting Mrs. Muhlhause about it or inquiring of her what it was given for.

In the very nature of things, without actual knowledge of either Jones or Wilson whether the signatures were genuine, and

with the knowledge of both that she denied their genuineness, any statement that Jones might make about that matter would, of necessity, be his opinion. And of necessity, Wilson knew that it could be only his opinion. There is wholly lacking any concealment from Wilson by Jones of any fact which in any way influenced him to purchase the bogus note. Under such facts and circumstances, Wilson can assert no cause of action against Jones.

Appellant has not sought to hold Jones liable on his alleged guaranty; nor could he do so. His action sounds entirely in fraud. The general rule as stated in 12 R. C. L. 245, is:

"Generally, therefore, fraud cannot be predicated upon the mere expression of an opinion which is understood to be only such or cannot reasonably be understood to be anything else, nor, upon representations in regard to matters of estimate or judgment." See, also, 26 C. J. 1079 and Texas cases there cited; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660; Zundelowitz v. Waggoner (Tex. Civ. App.) 211 S. W. 598.

An exception to the general rule occurs where the one charged is an expert, and knowingly makes representations as his opinion, which are not in fact his opinion, but falsely made with intent to mislead, and do mislead those relying upon them. In such case a fraudulent intent is present, and his statements are relied upon as statements of facts. But such exception has no application here. It was admitted by Wilson that he did not believe Jones had any intention to defraud him at the time; and in effect that Jones honestly believed at the time that the signatures on said note were the genuine signatures of Mrs. Muhlhause. Under such circumstances, even if Wilson had a right to and did rely upon Jones's opinion as a handwriting expert, he could not hold him liable for an honest, though erroneous, opinion. 26 C. J. 1086.

Under the facts conclusively shown by the record, we think the trial court properly instructed a verdict for the defendants, and his judgment is therefore affirmed.

Affirmed.