## WILSON v. JONES.
### No. 1514—5815.

Commission of Appeals of Texas, Section A.
Jan. 27, 1932.

clusion of the evidence the trial court instructed a verdict for Jones and Sarvis. An appeal was prosecuted to the Court of Civil Appeals, and that court affirmed the judgment of the trial court. 29 S.W.(2d) 845. The Supreme Court granted a writ of error upon the application of Wilson.

Plaintiff in error contends that the Court of Civil Appeals erred in overruling his assignments of error as follows:

(1) "The Court erred in instructing the jury to return a verdict for defendant."

(2) "There being evidence showing that defendant Jones represented to plaintiff as a matter of fact that the signature and endorsement on the note purchased by plaintiff were genuine, and that he guaranteed same to be genuine, the plaintiff relied thereon and paid a valuable consideration for said note, which was a forgery, which representation was recklessly made by defendant Jones, and was false, said defendant being in a position to have easily ascertained the falsity thereof, and the defendant Jones having received part of the purchase price of said note without the knowledge of plaintiff, and there being sufficient evidence in the record to warrant a finding that defendant Jones was financially interested in the sale of said note, and knew that he would, and expected to, receive part of the proceeds thereof at the time he induced plaintiff to buy same, the Court erred in instructing a verdict in favor of defendant Jones."

Tyler & Hubbard, of Belton, W. B. Weaver, and James B. Hubbard, both of Corpus Christi, for plaintiff in error.

John B. Daniel, of Temple, and A. L. Curtis, of Belton, for defendant in error.

SHARP, J.

E. M. Wilson filed this suit in the district court of Bell county against E. T. Jones, O. A. Sarvis, and Mrs. A. Muhlhause, alleging, in substance, that Sarvis and Jones sold to him a certain promissory note purporting to have been executed by Mrs. Muhlhause and purporting to be owned by Sarvis, Mrs. Muhlhause having denied the execution of the note; that Jones represented to Wilson that he was Mrs. Muhlhause's banker and knew that the signature was her genuine signature and that, if Wilson would buy the note, he (Jones) would guarantee that the signature was genuine; that Wilson bought the note relying on Jones' representations and guaranty, and that he did not know that Jones had any financial interest in the note or its proceeds until after he had purchased same, and that Jones and Sarvis divided the proceeds and that it afterwards developed that the signature of Mrs. Muhlhause was not genuine but a forgery; and prayed for judgment against Jones and Sarvis for the amount he paid for the note. Mrs. Muhlhause was dismissed from the suit during the trial, and at the con-

■ The authorities announce the general rule that to constitute actionable fraud it must appear: (1) That a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. The gist of an action based upon fraud is found in the fraud of defendant and damage to plaintiff. Each of these elements must be established with a reasonable degree of certainty, and the absence of any one of them will prevent a recovery. 26 C. J. pp. 1062, 1063, 1064, and 1065; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660.

■ The law rests upon the basic rule, which requires good faith in every business transaction and does not allow a party intentionally to deceive another by false representations or concealments, and, if he does so, it will require him to make such representations good. However, the general rule does not make one party responsible for every unauthorized, erroneous, or false representation made to the other, although it may have been

injurious. The ground of the action for misrepresentation is fraud and damage; both must concur to constitute actionable fraud; and, when both concur, the action will lie. 12 R. C. L. p. 239.

Where a relation of trust and confidence obtains between the parties, there is a duty to disclose all material facts, and failure to do so constitutes fraud. No general rule can be stated by which a relation of trust and confidence can be known. Each case furnishes its own standard. The rule applies whenever confidence is actually reposed by one party to the knowledge of the other. Of course, where the relations are not confidential and the parties deal at arm's length, there is no duty of disclosure, and silence is not fraud; and, if the facts are equally within the means and knowledge of both parties, or peculiarly within the knowledge of one party and of such a nature that the other has no right to expect information, an action for deceit will not lie. 26 C. J. pp. 1077 and 1078.

However, the rule is established that, if one of the parties to a transaction volunteers to convey information which may influence the other, he is bound to tell the whole truth, and a fraudulent misrepresentation of a material fact will render him liable. This is especially true if the fact concealed is peculiarly within the knowledge of one party and of such a nature that the deceived party is justified in assuming its nonexistence. There is a duty of disclosure, and a deliberate suppression of such facts is fraud. 26 C. J. 1078.

It was agreed between Wilson and Jones during the trial of the case that the note was a forgery and was not signed by Mrs. Muhlhause nor under her direction. The note was for $5,500, payable to Mrs. Muhlhause, and indorsed "A. Muhlhause," and it is undisputed that Wilson paid $4,950 for same.

Wilson, in substance, testified that he purchased the note in controversy at Bartlett, Tex.; that he was introduced to A. O. Sarvis, who had the note for sale, by E. T. Jones; that Jones came to his office at Bartlett and told him about Sarvis having the note; that he (Jones) told Wilson that he had been out to see Mrs. Muhlhause regarding the note and that she denied that it was her signature. However, he said he did not pay any attention to that from the simple fact that she had denied her signature before that in connection with transactions there in the bank; that he (Jones) would have bought the note himself had he the money to spare. He further stated that he would let the bank buy the note, but, on account of her having an account there, he did not want the bank to get into any squabble with Mrs. Muhlhause; that Jones stated to Wilson that he positively guaranteed that it was the signature of Mrs.

Muhlhause; otherwise naturally he (Wilson) would not have bought it.

Jones further stated that Sarvis had this note, and he said, "If you want to we will go over to the bank and you can meet Mr. Sarvis." Wilson then said, "What does he want for this note?" and he said, "I think you can get a 10% discount on it." Wilson stated that he went over there, and Jones introduced him to Sarvis and that Sarvis told him that he would discount the note for 10 per cent. and that he gave him a check for $4,950 for the note; that he borrowed the money from the Bartlett National Bank to do it; that he (Wilson) relied entirely on Jones' representation that the signature of Mrs. A. Muhlhause to the note was genuine.

The testimony further shows that when Sarvis cashed the check given him by Wilson he later paid Jones $450 for his services in the transaction; that about the time the suit was filed, or thereafter, Jones sent Wilson a check for the sum of $450, which Wilson accepted upon the ground that he would give him credit upon the claim he had against Jones. Wilson further testified that at the time he bought the note he did not know Jones was getting a commission out of the sale of the note; that Wilson emphatically guaranteed that it was her genuine signature. The testimony further shows that Jones was a banker and was an expert in passing upon the genuineness of signatures, and that through his statement with reference thereto caused Wilson to buy the note. The foregoing statement of the testimony will suffice for the purposes of this opinion and the passing upon the action of the trial court in instructing a verdict for the defendant. The other testimony introduced becomes immaterial.

In applying the foregoing legal principles to the facts of this case, we should keep in mind the well-settled rule that a representation which is expressed and understood as nothing more than a statement of opinion cannot constitute fraud and form a basis for recovery. This is especially true where the opinion expressed is honestly entertained. To be actionable, a false representation must be one of fact, as distinguished from an expression of opinion which ordinarily is not presumed to deceive or mislead, or to influence the judgment of the hearer, and upon which he has no right to rely. The same rule applies to statements which are expressed with respect to matters of estimate or judgment. 26 C. J. pp. 1079, 1080, 1081, and 1082; 12 R. C. L. pp. 245 and 246.

But the testimony introduced in this case places Jones at a disadvantage with respect to the foregoing rule just stated. He was a banker, an expert in passing upon the genuineness of signatures, and he stated positively that it was the signature of Mrs. Muhlhause signed to the note and that he would

guarantee it; that he sought his friend Wilson who did not know Sarvis, who held the note for sale, and then introduced Wilson to Sarvis, who sold the note to Wilson at a 10 per cent. discount; that his connection with the matter was not free of suspicion or that he was not financially interested therein, because the evidence shows that he received for his services in getting Wilson to buy the note the sum of $450, which fact he concealed from Wilson until threatened with a suit. It is true that he sent the amount received by him to Wilson, but that did not bring him under the rule just stated.

The testimony brings him under another well-settled rule, which is more exacting, that an expert's opinion as to a matter susceptible of knowledge is regarded as a statement of fact, upon which reliance may properly be placed, and, if it is made scienter, that is, either with knowledge of their falsity or in culpable ignorance of their truth, constitutes remediable fraud. 26 C. J. pp. 1086–1105. In this state the rule is well established that ordinarily bad faith or fraudulent interest is not essential to actionable fraud. Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Loper v. Robinson, 54 Tex. 510; Russell v. Industrial Transportation Co., 113 Tex. 450, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1. The rule is further well established in this state that, where affirmative representations of fact are made and designed to be acted upon by another and he does so believing them to be true when they are false, one making the representations is liable, regardless of his knowledge of falsity or intent to deceive. Loper v. Robinson, supra; United States Gypsum Co. v. Shields, 101 Tex. 473, 108 S. W. 1165; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660.

The testimony raised certain controverted issues to be determined. A jury was demanded to try the facts. It was their province to pass upon the ultimate issues. The rule is well settled that, if there is such evidence as would cause reasonable minds to draw different conclusions, the case should be submitted to the jury. In other words, it becomes a question of law only when the facts and circumstances are such that but one reasonable conclusion can be drawn therefrom. The evidence presents issues of fact to be determined, and the trial court and the Court of Civil Appeals erred in holding to the contrary.

We recommend that the judgments of the district court and the Court of Civil Appeals be reversed and this cause remanded to the district court for another trial in accordance with this opinion.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.