Charles C. STONE, Jr., Petitioner,

v.

LAWYERS TITLE INSURANCE COR-
PORATION et al., Respondents.

No. B–6109.

Supreme Court of Texas.

July 13, 1977.

Rehearing Denied July 26, 1977.

Prichard, Peeler & Cartwright, C. Edwin Prichard, Jr., Corpus Christi, for petitioner.

Wood, Burney, Nesbitt & Ryan, James P. Ryan, Kleberg, Mobley, Lockett & Weil, Ernest F. Bogart, Jr., John A. Waller, Corpus Christi, for respondents.

DENTON, Justice.

Charles C. Stone, Jr., the purchaser of a tract of land in Nueces County, filed this suit for damages resulting from the existence of a pipeline easement inside the boundaries of the tract of land purchased. Stone sued Lo-Vaca Gathering Company in trespass to try title to determine the validity of the easement; Isabel B. Weil Goodstein, the seller of the land, for breach of warranty; Lawyers Title Insurance Corporation on an owner's title policy covering the tract of land for damages sustained due to the failure of the policy to show the pipeline easements as exceptions; Lawyers Title Agency of Corpus Christi, Inc. and Eli Lipner, its President, who countersigned the title policy for fraud and negligence in failing to show the pipeline easements as an exception to the policy and in a mortgagee's title binder; and Joe B. Weil, Jr., the real estate agent who negotiated the sale, for fraud.

The trial court granted an interlocutory take-nothing judgment in favor of Lo-Vaca, which became final when the final judgment was rendered. No appeal was taken from this portion of the judgment. Stone took a non-suit as to Isabel Goodstein during the trial. At the conclusion of the plaintiff's evidence, the trial court granted instructed verdicts for Lawyers Title Agency of Corpus Christi, Eli Lipner and Joe B. Weil, Jr., and rendered judgment for the plaintiff for $2,789 as damages under the terms of the title policy against Lawyers Title Insurance Corporation. The court of civil appeals, by a majority opinion, affirmed the portion of the trial court's judgment in favor of Lawyers Title Agency of Corpus Christi, Lipner and Lawyers Title Insurance Corporation, and reversed and remanded that portion of the judgment in favor of Weil. 537 S.W.2d 55. We reverse and remand as to petitioner's alleged cause of action against Lawyers Title Agency and Lipner.

Stone, desiring to construct a mobile home park, contacted Weil concerning the purchase of a tract of land out of a certain 70 acre tract in Nueces County owned by Mrs. Goodstein. Stone was interested in a particular 18.639 acre tract in the Southeast corner of the 70 acre tract. A twenty-five foot strip of land adjacent to the south

boundary line of the 18.639 acre tract was excluded from the tract Stone proposed to purchase because of several oil and gas pipelines that were known to be located in that strip. On February 19, 1971, Stone entered into a contract with Mrs. Goodstein to purchase the tract, and it was conveyed to him by warranty deed dated March 11, 1971 for a cash consideration of $55,917.00. No exceptions or reservations appear in the deed. On March 12, 1971 Lipner, acting as President of the Title Agency and as agent for Title Insurance Corp., issued an owner's title policy to Stone which insured the title to the land in the amount of the purchase price. In addition, a Mortgagee's Title Policy Binder on Interim Construction Loan in the amount of $370,000.00 was issued to the Corpus Christi Savings and Loan Association for the benefit of Stone. Neither the owner's title policy nor the binder made mention of the pipeline's easements of record.

Stone obtained a commitment from the Federal Housing Administration to insure a loan of $397,000.00. The commitment was based upon the construction of a mobile home park containing 147 spaces. In June 1971, when the Park was approximately 80% complete, it was discovered that a high pressure gas pipeline lay some four feet inside the southern boundary line of the tract purchased by Stone. Subsequently, several other pipelines were discovered inside the southern boundary line of the tract. It was determined that these pipelines were in easements in a strip of land approximately 25 feet in width just north of the south line of the 18.639 acre tract. In order to comply with regulations of the FHA concerning the proximity of residential structures to live pipelines, Stone was required to redesign the park following the discovery of live pipelines within the boundaries of the tract that he had purchased. The redesigned park contained only 129 spaces, which caused the FHA to reduce its commitment to Stone to $318,500.00.

Stone contends that the court of civil appeals incorrectly affirmed the trial court's action in instructing a verdict against Stone in favor of Lipner and Lawyers Title Agency on Stone's cause of action for fraud. The court of civil appeals correctly stated the general rule regarding the elements of actionable fraud: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he thereby suffered injury. *Oilwell Division, United States Steel Corporation v. Fryer,* 493 S.W.2d 487 (Tex.1973); *Wilson v. Jones,* 45 S.W.2d 572 (Tex.Com.App.1932, holding approved).

The court of civil appeals has held that there is no evidence, supported by proper pleadings, to support a judgment against either Lipner or Lawyers Title Agency for fraud. In Stone's Fifth Amended Petition, upon which he went to trial, he alleged that, in the preparation for the closing of the real estate transaction called for in the contract of sale, an employee of the Lawyers Title Agency made an examination of the title to the property, and wrote a title opinion which listed the pipeline's easements, in question, as an encumbrance upon the property. It was further alleged that this title opinion was delivered to Lipner shortly after it was written. Stone made the following allegations concerning the representations made by Lipner to Stone:

### COUNT I

. . . On March 12, 1971, or within a few days just prior thereto, the Defendant ELI LIPNER called the Plaintiff by telephone and stated that JOE WEIL was in his office and that there was some confusion over pipeline easements, and asked the Plaintiff if he knew of any pipeline or easement on the property. The Plaintiff replied that he did not know of any, but that Mr. LIPNER was the one who was supposed to be able to search the records out. Mr. LIPNER then hung up without divulging the details of the confusion. Later that same

day or the next day or two thereafter, JOE WEIL came to see the Plaintiff and told him that everything was straightened out and that Mr. LIPNER was mistaken as to where the pipeline easement was. To verify that the matter was straightened out, the Plaintiff telephoned Mr. LIPNER either on or just prior to March 12, 1971, and asked if everything was squared away. Mr. LIPNER replied that it was, and that there would be no exceptions in the Title Policy.

. . . Also, the statement made by Mr. LIPNER either on or just prior to March 12, 1971, when he told Mr. STONE that everything was squared away concerning the pipe-lines coupled with the fact that Mr. LIPNER then caused to be issued through LAWYERS TITLE AGENCY OF CORPUS CHRISTI, INC., an Owner's Policy of Title Insurance (attached as "Exhibit A") and a Mortgagee's Title Policy Binder on Interim Construction Loan, neither of which contained any mention of pipeline easements, plus the further fact that Mr. LIPNER approved for transfer of title the Warranty Deed from ISABEL B. WEIL (GOODSTEIN) which also did not mention any pipeline easements, constituted common law fraud on the part of ELI LIPNER and LAWYERS TITLE AGENCY OF CORPUS CHRISTI, INC., constituted representations on their part that the title to the land Plaintiff was buying was not burdened with pipelines or pipeline easements. These representations were made with the intention that they be acted upon by the Plaintiff in the manner reasonably contemplated, (i. e., he would close the transaction, take title to said property and construct an FHA insured mobile home park thereon). Plaintiff rightfully relied upon the truth of said representations which were of material facts. These statements and acts were willfully made and done by each of the three Defendants and they knew, or in the exercise or reasonable care they should have known, the falsity of their statements and acts.

■ It is well established that in the absence of special exceptions, the petition will be construed liberally in the pleader's favor. *Gulf, Colorado and Santa Fe Railway Company v. Bliss,* 368 S.W.2d 594 (Tex. 1963); *Hanley v. Oil Capital Broadcasting Ass'n,* 141 Tex. 243, 171 S.W.2d 864 (1943). The court of civil appeals concluded that the statement in the pleadings quoted above, could be read as alleging nothing more than that Lipner stated "there would be no exceptions" which in and of itself was not a misrepresentation of fact. This conclusion was reached by reasoning that the term "squared away," a general allegation, was limited by the specific allegation "there will be no exceptions in the title policy." Although the rule that a special allegation controls over a general allegation was correctly stated, we think the application of the rule was misplaced. The allegation that Lipner said everything was "squared away," is simply not a general allegation and is not limited by the further allegation that he said "there will be no exceptions in the title policy."

■ Pleadings are sufficient under the Rules of Civil Procedure if they give fair and adequate notice to their adversary. *Osteen v. Crumpton,* 519 S.W.2d 263 (Tex.Civ. App.1975, writ ref'd); *McCamey v. Kinnear,* 484 S.W.2d 150 (Tex.Civ.App.1972, writ ref'd n. r. e.); Rule 45 Texas Rules of Civil Procedure. Stone's pleadings as contained in the Fifth Amended Petition were sufficient to support a cause of action for fraud against Lipner and Lawyers Title Agency.

The court of civil appeals has held that there was no evidence supported by pleadings, that Lipner ever represented to Stone that there were no easements on the property. Although there was evidence admitted on this point, the court questioned the effect of the portion of the evidence and held that other portions should have been excluded as being outside the pleadings. Stone testified concerning representations made by Lipner to Stone in a telephone conversation which took place either March 10th or 11th, 1971, as follows:

Q All right. Now just prior to the closing of this transaction on March the 12th of 1971, did you have any conversations with Mr. Lipner or Mr. Weil about pipelines in this 18.639 acres of land?

A . . . Mr. Lipner called me and asked me if I knew of any pipeline easements on the property that I was purchasing, and my words were to the effect that, "My Lord, Eli, I don't know of anything out there. That's your job. You're supposed to be the one that's being paid to search the title," and he hung up. Shortly thereafter Joe Weil came up to the office and told me that Eli was confused and that he had it all straightened out. That there wasn't any easements there. There wouldn't be any exceptions in the policy. I called Eli Lipner to confirm that, and he did. That was the reason why I entered into the contract . . . ..

    *    *    *    *    *    *

Q Now, what was the substance of the conversation when you called Mr. Lipner?

A I wanted to find out from Mr. Lipner personally if Mr. Weil was conveying the correct information concerning the easements, and Mr. Lipner said that it's true, that there was confusion. "I found out that there were no easements on the property. There will be no exceptions made."

■ The trial court overruled the objection of Lipner's counsel that this evidence was at variance with the plaintiff's Fifth Amended Petition. The court of civil appeals held that this evidence should have been excluded, and reasoned that in light of the objection there was no implied consent to a trial of the issue outside of the pleadings, and if this evidence had been excluded there was no evidence of a misrepresentation. We do not believe that there was a variance with the pleadings and, if so, it was not a material variance. The testimony of Stone that Lipner stated "I found out that there were no easements on the prop-

erty" was within the pleading's of Stone, quoted above, even though the exact words were not quoted in the pleadings.

■ In order for a variance to be fatal it must be substantial, misleading and prejudicial departure from the pleading. *Orgain v. Butler,* 478 S.W.2d 610 (Tex.Civ.App. 1972, no writ); *Glens Falls Insurance Company v. Vetrano,* 347 S.W.2d 769 (Tex.Civ. App.1961, no writ); *Lumbermen's Insurance Corporation v. Jones,* 311 S.W.2d 873 (Tex.Civ.App.1958, writ ref'd n. r. e.). There is nothing in the record to indicate that Lipner was misled, surprised or prejudiced by this evidence. This is particularly true in view of the fact that Lipner filed no special exception that the pleadings were too general or ambiguous.

■ Mr. Stone further testified concerning his conversations with Lipner as follows:

Q Mr. Stone, was there any conversation or any use of a term like "squared away" in your conversation with Mr. Lipner?

A Yes, there was.

Q Do you recall how that was used or exactly what was said?

A Well, it was first used in vain. That everything was in apple pie order. Everything was squared away. He knew what he was doing.

    *    *    *    *    *    *

He (Lipner) said that he and Joe Weil had resolved the confusion. That he knew now where the easements were. They were not in the property that I purchased. Words to that effect.

The court of civil appeals stated that the statement "everything was squared away" would not support an inference that Lipner misrepresented the existence of easements on the property. When this statement is taken in the context of the other testimony it seems clear that it would reasonably support an inference that Lipner misrepresented a material fact. The court also took the view that Stone's testimony "that he (Lipner) knew now where the easements were"

was nothing more than Stone's interpretation of what Lipner said. We think the statement at most indicates that Stone was paraphrasing Lipner's language. The statement clearly constitutes some evidence that Lipner represented that there were no easements on the property.

The court below further held that there was no evidence that Lipner knew any representations that he made to be false, or that he made them recklessly without any knowledge of its truth. It is undisputed that Lipner's chief title examiner had prepared a title opinion which indicated that the land involved was encumbered by the easements in question. Lipner testified that although he did discuss with the title examiner the question of whether certain covenants which apparently encumbered the land should be excepted from the policy, he did not discuss with the examiner the appropriateness of eliminating the easements in question from the policy prior to the time he personally eliminated them. Nor did Lipner examine the take-off cards at his office which would have revealed the easements. This testimony is uncontradicted despite the fact that the testimony of Stone, set out above, indicated that Lipner was confused on the very point, i. e. where the easement should have been included. Instead, Lipner testified that he relied upon the facts given to him by Mr. Weil, the real estate agent, to the effect that the pipelines and easements were limited to the twenty-five foot strip bordering the property purchased by Stone.

We think the above facts reasonably call for an inference of knowledge of falsity on the part of Lipner or they are sufficient to raise a fact issue on the question of whether Lipner recklessly made a statement as a positive assertion without knowledge of its truth. By relying solely on what Mr. Weil had told him, and disregarding the title opinion and the take-off cards, it can be said that Lipner recklessly represented a fact without knowledge of its truth.

Finally, the court below held that there was no reliance by Stone on the misrepresentations of Lipner. It seems clear that the testimony of Stone as to his conversation with Lipner, set out above, was some evidence of reliance. The testimony indicates that Stone was depending on Lipner to conduct a title search, that Stone in fact called Lipner back to ascertain if the property did contain any easement. Additionally, Stone testified that he would not have closed the deal if he had known of the easements. He testified, "I relied on Mr. Lipner and Mr. Weil 100%. If there had been any doubt, any question in the mind of Charles C. Stone, Jr. that he was purchasing a piece of property that was encumbered with easements, I would not have entered into the contract." The context of the question and subsequent testimony clearly establishes that Stone was referring to the final closing.

Viewing the evidence in the light most favorable to the plaintiff below, as we are required to do, we hold there was evidence of actionable fraud against Lipner and Lawyers Title Agency of Corpus Christi, and that therefore the court of civil appeals erred in holding that an instructed verdict for these defendants was properly granted.

■ We think the court of civil appeals correctly reversed and remanded that portion of the trial court's judgment in favor of Weil. The record shows that all elements of fraud in the alleged cause of action against Weil were properly pleaded and that there was evidence of actionable fraud against him.

The judgment of the court of civil appeals which rendered a take nothing judgment against Lipner and Lawyers Title Agency of Corpus Christi, Inc. is reversed, and that cause is remanded to the trial court for a hearing on the merits. In all other respects, the judgment is affirmed.