Walter DITTBERNER, Appellant,

v.

C. H. BELL and Monty C. Bell, Appellees.

No. 8821.

Court of Civil Appeals of Texas, Amarillo.

Nov. 7, 1977.

Rehearing Denied Nov. 28, 1977.

Folley, Snodgrass & Calhoun, O. M. Calhoun, Amarillo, for appellant.

Gibson, Ochsner, Adkins, Harlan & Hankins, W. P. Sturdivant, Amarillo, for appellee C. H. Bell.

REYNOLDS, Justice.

The trial court rendered judgment for the payee-holder of a promissory note against a

co-maker, adjudging that the co-maker take nothing in his actions based on fraud, either for recovery of monetary damages or in defense of liability on the note, or for judgment over against the other co-maker. On the appellate record, the co-maker waived a finding on an essential element of fraud that was not established as a matter of law, but no challenge has been made to his plea for judgment over against the other co-maker. Reformed and affirmed.

C. H. Bell contracted to sell his Panhandle, Texas, automobile and farm equipment business to his son, Monty C. Bell, and to Walter Dittberner, accepting their promissory note as a part of the consideration. Thereafter, Monty managed the partnership business and Dittberner assumed the role of a silent partner. Some three years later, the business failed.

Dittberner filed this suit against C. H. Bell and Monty C. Bell, alleging that he was induced to enter into the contract by the fraudulent representations of the Bells and was entitled to recover his resulting monetary damages. C. H. Bell denied Dittberner's allegations, and cross-actioned to recover from Dittberner the principal balance and accrued interest due on, together with the attorney's fees provided in, the promissory note. Dittberner responded that if he was liable on the note, he should have judgment over against Monty for the amount of his adjudged liability. Monty did not file a formal answer, but, during the trial, he orally entered his appearance and general denial.

Trial was before a jury. Dittberner was the only witness. In brief, his testimony was that C. H. Bell stated that: he wanted to retire from the business and wanted someone to be a silent partner with Monty; the business had been financially successful under the partial management of Monty for the past three or four years; Monty "was capable of managing" the business; and under Monty's management, the business would pay for itself. Relying on and being induced by these representations, which C. H. Bell knew were false and without which he (Dittberner) would not have entered into

the transaction, he, together with Monty, executed the conditional sales contract for the purchase of the business for $70,000. Dittberner paid $29,000 cash to C. H. Bell, who gave Monty credit for $10,000, executed with Monty a $31,000 promissory note payable to C. H. Bell and, during Monty's management of the partnership business, expended over $18,000 net to pay overdrafts and an outstanding check given by Monty. During his management, Monty overdrew his business account by more than $16,000. After the business failed, C. H. Bell told Dittberner that "one reason he (C. H. Bell) wanted to get out of business . . . he never could trust Monty, that Monty was not a capable operator or manager."

During his cross-examination, Dittberner confirmed that the contract recited that Dittberner had investigated the property, was relying on his own judgment, and does not "rely on the representation of anyone," which, he admitted, included C. H. Bell. To the question, " . . . you have no knowledge of Mr. C. H. Bell ever telling you one thing that was not true, correct?", Dittberner answered, "No, sir." On re-direct following a recess, Dittberner was permitted to answer, over objection that he had talked to counsel and this was an attempt to impeach, that after the business failed, he found out that C. H. Bell's representations were not true.

At the close of the evidence, C. H. Bell moved for an instructed verdict. The motion was granted to the extent that a verdict was instructed in favor of C. H. Bell and against Dittberner on the note, conditioned on the failure of the jury to find the necessary elements of fraud to defeat the claim on the note.

Answering the six special issues submitted in the charge of the court, the jury found that: (1) C. H. Bell represented to Dittberner that Monty Bell was a competent manager of the business; (2) the representation was made as a material inducement to Dittberner to execute the note and contract; (3) C. H. Bell made the representation as a statement of fact; (4) the representation was false; (5) Dittberner relied

on said representation; and (6) Dittberner would not have executed the note and contract had the representation not been made. Dittberner made no request for the submission of any other issues, but C. H. Bell objected to the charge for, among other reasons, the failure to submit an issue inquiring whether he knew the charged representation was false at the time he made it.

C. H. Bell moved for judgment by a written motion entitled "MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO." The court, designating the motion "a motion that judgment be entered in his (C. H. Bell's) favor notwithstanding the verdict," granted the motion without indicating which of its grounds was found valid. Judgment was rendered decreeing that Dittberner take nothing and that C. H. Bell recover from Dittberner on the promissory note in the total sum of $32,084.16, with interest at the rate of ten (10%) per cent per annum from 30 September 1976 until paid, and all costs.

Appealing, Dittberner asserts that the court erroneously granted the motion for, and rendered, judgment notwithstanding the verdict, and contends that he merits judgment on the jury's verdict. His premise is that the verdict coupled with his damages, which were established as a matter of law, entitles him to judgment; and, if any necessary element of fraud was unsubmitted to the jury, it was established as a matter of law. C. H. Bell has joined these issues on appeal. Candidly, Dittberner does not challenge the right of C. H. Bell to recover on the promissory note if there was no fraud; but, in that event, Dittberner asserts that the court erred in failing to grant him judgment against Monty C. Bell. Monty has not responded.

■ To properly posture the appeal, it first is necessary to determine within the scope of the Rules of Civil Procedure [1] the nature of C. H. Bell's motion, which the parties regard as being one for judgment non obstante veredicto, and of the judgment, which the parties refer to as one

rendered notwithstanding the verdict. The nature of a motion is determined, not by its caption but by its substance, which is gleaned from the body and the prayer of the instrument. *Mercer v. Band,* 454 S.W.2d 833, 835–36 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). A judgment is construed as a whole, *Rodgers v. Williamson,* 489 S.W.2d 558, 560 (Tex.1973), like other instruments. *Permian Oil Co. v. Smith,* 129 Tex. 413, 107 S.W.2d 564, 567 (1937).

■ The authority for a motion seeking judgment non obstante veredicto, and for the judgment rendered pursuant thereto, is Rule 301. The rule reads, in part:

. . . Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence. . . .

Under the rule, a court cannot render judgment non obstante veredicto except upon a motion therefor. *Wilton v. Johnson,* 278 S.W.2d 488, 489 (Tex.Civ.App.—Amarillo 1954, no writ). *Accord, Hines v. Parks,* 128 Tex. 289, 96 S.W.2d 970, 972 (1936), construing the same language in Vernon's Ann. Civ.St. art. 2211, the source of Rule 301.

■ Implicit in the rule is the principle that a motion for judgment non obstante veredicto lies only if a directed verdict would have been proper. And a directed verdict is warranted only when the evidence is such that no other verdict can be rendered and the winning party is entitled, as a matter of law, to judgment. *White v. White,* 141 Tex. 328, 172 S.W.2d 295, 296 (1943). It follows that a directed verdict is not proper where the pleadings and the evidence raise factual issues for the jury's determination. *Hicks v. Matthews,* 153 Tex. 177, 266 S.W.2d 846, 849 (1954). Thus, by definition, a motion for judgment non obstante veredicto, and the judgment rendered pursuant to it, must be predicated on

---

1. All rules cited herein are the Texas Rules of Civil Procedure.

either the presence of conclusive evidence which entitles the moving party to judgment as a matter of law or on the absence of any evidence of probative force to support an issue that the opposing party must prove in order to prevail.

■ Tested by these standards, C. H. Bell's motion is not one seeking judgment non obstante veredicto. Although entitled as such, the motion has no assertions that any issue submitted to the jury is without support in the evidence, or that any fact was conclusively established contrary to the jury's finding, or even that any finding should be disregarded. There is no prayer for judgment non obstante veredicto.

Rather, the substance of the motion is that, given the previously instructed verdict on the note and the verdict of the jury, C. H. Bell has a right to judgment because Dittberner failed to request or obtain jury findings on, and thereby waived, the essential elements of fraud, both as a ground for recovery of damages and as a defense to the cross-action on the note. Mentioned as waived are the elements whether C. H. Bell knew the statement was false at the time it was made, whether an injury was the result of the statement, and a finding of damages. As a result, the motion was merely a motion for judgment and not a motion for judgment non obstante veredicto.

■ Absent a motion for judgment non obstante veredicto, there could be no judgment notwithstanding the verdict. While the judgment recites that the motion is for judgment notwithstanding the verdict and that it should be granted, the judgment has no provision common to a basis for judgment non obstante veredicto. Instead, it, after containing notations of the instructed verdict, return of the jury's special verdict, and the granting of the motion, provides only that Dittberner take nothing and that C. H. Bell recover from Dittberner on the note. The judgment, therefore, is not a judgment non obstante veredicto.

It is in the light of the true nature of the motion and judgment that Dittberner's points of error are considered. The first three points are that the court erroneously sustained C. H. Bell's motion and rendered judgment because Dittberner was entitled to judgment on the verdict. Dittberner asserts that the verdict includes affirmative findings on all necessary elements of fraud, it being his position that knowledge of the falsity of a representation at the time it was made is not an essential element of fraud, either as a ground of recovery or as an affirmative defense; but, if it is, C. H. Bell's knowledge of falsity was established as a matter of law. C. H. Bell adopts the opposite viewpoint.

Both parties cite authorities sustaining their diverse propositions, yet both initially rely upon, with quotations of different holdings from, *Wilson v. Jones,* 45 S.W.2d 572 (Tex. Comm'n App. 1932, holdings approved). In support of his position that there is no necessity for a finding that C. H. Bell knew his representation was false when he made it, Dittberner quotes the *Wilson* holding appearing at 575 in this language:

. . . The rule is further well established in this state that, where affirmative representations of fact are made and designed to be acted upon by another and he does so believing them to be true when they are false, one making the representations is liable, regardless of his knowledge of falsity or intent to deceive.

Countering that an affirmative finding of knowledge of falsity is a prerequisite to establish fraud, C. H. Bell quotes from the same authority this holding at 573:

The authorities announce the general rule that to constitute actionable fraud it must appear: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. The gist of an action based upon fraud is found in the fraud of defendant and damage to

plaintiff. Each of these elements must be established with a reasonable degree of certainty, and the absence of any one of them will prevent a recovery.

■ In addressing the question, we assume that C. H. Bell's representation was, in conformity with the jury's finding, a statement of a present or pre-existing fact rather than, as C. H. Bell advocates, a mere opinion. We also grant that the Texas decisions on the question have been conflicting,[2] but we must subscribe to our Supreme Court's latest expressions on the question. Those expressions are that the element that the speaker knew his representation was false, or that he positively asserted it recklessly without any knowledge of its truth, is one of the necessary elements of fraud, whether as a ground of recovery, *Stone v. Lawyers Title Insurance Corporation*, 554 S.W.2d 183, 185 (Tex.1977), or as an affirmative defense. *Oilwell Division, United States Steel Corporation v. Fryer*, 493 S.W.2d 487, 490–91 (Tex.1973).

Both *Stone* and *Fryer* list as the elements of fraud the same six elements enumerated in *Wilson v. Jones, supra,* at 573, and cite that case as authority. *Fryer* speaks of them as "the necessary elements of fraud," elliptically quoting from *Wilson v. Jones, supra* : "Each of these elements must be established . . ., and the absence of any one of them will prevent a recovery." *Stone* refers to the six enumerations as the "correctly stated" elements of actionable fraud and, focusing on the question before us, details the evidence adduced to show, in response to the intermediate court's holding

that there was no evidence on the element, that it either lead to an inference of knowledge of falsity or raised a fact issue of whether the speaker recklessly made a statement as a positive assertion without knowledge of its truth.

■ As a consequence of these pronouncements, we hold that, within the framework of this appeal, Dittberner was required to either establish as a matter of law or secure a factual finding that C. H. Bell knew his representation was false at the time he made it. There was not, and Dittberner did not request, a jury finding on the element; he contends, instead, that it was affirmatively established as a matter of law.

■ Dittberner, the only witness, was an interested party. His testimony merely raised a factual issue of C. H. Bell's knowledge of the falsity of the representation when it was made, unless it can be said that Dittberner's testimony is clear, direct and positive on the issue and there are no circumstances in evidence tending to discredit or impeach it. *Cochran v. Woolgrowers Central Storage Co.,* 140 Tex. 184, 166 S.W.2d 904, 908 (1942). We have sifted all of the evidence, the essence of which is recited above. Although not contradicted by any other witness, Dittberner's testimony contains incompatible assertions which prevent it from being clear, direct and positive on the issue. The testimony, therefore, does not meet the test of establishing the affirmative of the element as a matter of law, and Dittberner was relegated to securing a favorable finding on the factual issue.

**2.** Illustratively, in *Graves v. Hartford Accident & Indemnity Co.,* 138 Tex. 589, 161 S.W.2d 464, 466–67 (1942), the Supreme Court said, " . . . (U)nder the law of this state . . . it is not an essential element of fraud that the party charged therewith . . . must know of the falsity of the representation in question;" yet the Court listed in *Stone v. Lawyers Title Insurance Corporation,* 554 S.W.2d 183, 185 (Tex.1977), and in *Oilwell Division, United States Steel Corporation v. Fryer,* 493 S.W.2d 487, 491 (Tex.1973), the element that the speaker knew his representation was false or he positively asserted it without knowledge of its truth as one of the necessary elements of fraud. Some Texas cases—e. g., *Wilson v.*

*Jones,* 45 S.W.2d 572 (Tex. Comm'n App. 1932, holdings approved), and *Harris v. Sanderson,* 178 S.W.2d 315 (Tex.Civ.App.—Eastland 1944, writ ref'd w. o. m.)—have marked a distinction between a false representation of fact and a false statement of opinion: given the other elements of fraud, the false factual representation is actionable without any knowledge of its falsity, but a false statement of opinion becomes actionable only if expressed on a matter susceptible of knowledge and is stated with knowledge of its falsity. Other cases have applied, apparently without distinction for the character of the statement, one rule or the other. See 25 Tex.Jur.2d Fraud and Deceit § 13.

**534**

In a jury trial, each litigant has the legal right to have the jury pass upon the essential issues of fact raised by the pleadings and the evidence which are sufficient to form the basis of a judgment. *Wichita Falls & Oklahoma Ry. Co. v. Pepper,* 134 Tex. 360, 135 S.W.2d 79, 85 (1940). Dittberner pleaded and produced evidence on the issue of C. H. Bell's knowledge of the falsity of his representation; yet, despite the direction by Rule 277 for the court to submit the controlling issues raised by the pleadings and the evidence, the issue was omitted from the court's charge. Dittberner made no request for the submission, or even any objection to the omission, of the issue. Rule 279 requires the party relying on the issue to request, on penalty of waiver for failure to request, the issue's submission in substantially correct wording. Under the rule, waiver would not occur if the omitted issue is a component element of a ground of recovery or defense partially submitted and the issue is omitted *without a request therefor by the party relying on it or an objection by the party opposing the issue.* In that situation, the omitted jury issue is submitted to the trial court for resolution. *Wilson v. Remmel Cattle Co., Inc.,* 542 S.W.2d 938, 942 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.). Here, however, although he had no duty to do so, C. H. Bell objected to the omission of the issue, and his objection precluded any finding by the trial court on the element not submitted to the jury. *Petroleum Anchor Equipment, Inc. v. Tyra,* 419 S.W.2d 829, 834 (Tex.1967). Consequently, Dittberner waived one of the controlling issues upon which he relied for recovery and for defense and, by doing so, he has not met the burden placed on him by the law. *Wichita Falls & Oklahoma Ry. Co. v. Pepper, supra,* at 85.

When Dittberner failed to conclusively establish that C. H. Bell knew his representation was false when he made it, and waived a jury finding thereon, he foreclosed his cause of action for damages and his affirmative defense to liability on the note on the ground of fraud, and C. H. Bell became entitled to the judgment rendered. This result dictates the overruling of Ditt-berner's first three points of error, and pretermits a discussion of his next four points which submit that the judgment is not warranted by the other grounds advanced in C. H. Bell's motion for judgment.

Dittberner's eighth, and last, point of error is that the court erred in failing to render judgment in his favor against Monty, the co-maker of the note on which Dittberner has been held liable. He contends that on the record judgment over should be rendered as a matter of law.

Established is the execution of the note by Dittberner and Monty as co-makers and the amount of liability thereon. While each signer of a note is liable to the payee for the entire amount, V.T.C.A., Bus. & C. § 3.118(5), generally, as between two signers, each is liable for one-half of the amount. *Beitel v. Beitel,* 109 S.W.2d 345, 348 (Tex.Civ.App.—San Antonio 1937, writ dism'd). If, however, the co-obligors shared unequally in the consideration received out of the note, contribution may be prorated according to the benefits each received. *Maresh v. Jennings,* 38 S.W.2d 406, 407 (Tex.Civ.App.—Austin 1931, writ ref'd).

Dittberner's brief contains factual statements of the record showing amounts which, mathematically computed, demonstrate that the consideration flowing from the execution of the note benefited Monty and Dittberner in proportions of 63.57% and 36.43%, respectively, and that, as between them, their proportionate liability for the amount of $32,084.16 now due on the note is $20,396.36 and $11,687.80, respectively. Monty has not filed a brief and Dittberner's factual recitations of the record have not been otherwise answered or challenged. Under these circumstances, Rule 419 authorizes the acceptance of Dittberner's statements as correctly stating the facts and the record in disposing of the point. *Campbell v. Campbell,* 477 S.W.2d 376, 378 (Tex.Civ.App.—Amarillo 1972, no writ).

Accordingly, the judgment is reformed to decree that Walter Dittberner do have and recover from Monty C. Bell all

sums that Dittberner shall pay on the judgment in excess of $11,687.80 and the accrued interest on that sum, together with interest on the excess at the rate of nine (9%) per cent per annum from the date(s) of payment(s) until paid. Rule 434.

As reformed, the judgment of the trial court is affirmed.