R. Wayne MANN, Appellant,

v.

FITZHUGH–STRAUS MEDINA RANCH, Appellee.

No. 04–82–00052–CV.

Court of Appeals of Texas, San Antonio.

Sept. 1, 1982.

W. H. Jordan, Jr., Houston, Jack Lee, Lee & Lee, Mason, for appellant.

G. Thomas Coghlan, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and CANTU, JJ.

## OPINION

CANTU, Justice.

This is an appeal from an order of the trial court denying a plea of privilege.

Appellee, the plaintiff below, brought suit in Menard County, Texas, against the appellant, the defendant below, seeking damages for a breach of an alleged written contract executed and performable in Menard County and in the alternative for alleged fraudulent misrepresentations that appellant would purchase cattle from appellee. Appellant filed a plea of privilege to be sued in Harris County, the county of his residence.

The appellee filed its controverting plea alleging that the action was maintainable in Menard County under Tex.Rev.Civ.Stat. Ann. art. 1995 subd. 5(a) and/or 5(b) (Vernon Supp.1981), as a contractual agreement between the parties executed, entered into and performable in Menard County, Texas, and/or as a contractual obligation to pay money based upon or arising out of a consumer transaction for goods, services, loans or extensions of credit intended primarily for agricultural use.

Appellee further alleged in the alternative that the action was based upon fraud and/or misrepresentation all of which occurred in Menard County, Texas, thus making venue proper in Menard County under Tex.Rev.Civ.Stat.Ann. art. 1995 subd. 7 (Vernon 1964).

After a trial before the court, the plea of privilege was overruled. Thereupon this appeal was perfected.

Appellee is a partnership engaged in the cattle business. This partnership maintained one of its cattle herds on a leased ranch located in Menard County, and owned

by Olivia Bevans. In the spring of 1980, H.A. Fitzhugh, a partner, made contact with appellant, who was negotiating for the purchase of a ranch in Maverick County, Texas, where one of appellee's other cattle herds was located. The parties discussed a possible purchase-sale of this Maverick County herd. Appellant, however, advised appellee that he would require a larger herd and appellee offered to show him partnership cattle in Menard County.[1]

On June 18, 1980, appellant, accompanied by his veterinarian, flew to San Antonio and was met by appellee who drove them to the Bevans Ranch. They spent three and a half to four hours inspecting cattle. Appellant admits that a price was agreed upon and that he represented that he would pay appellee that price, that a representation was made in Menard County that he would take delivery of the cattle in November. The parties also agreed that one-half of the purchase price would be paid down with the other half paid at the time of delivery or January 1, 1981, at the option of appellee. Appellee admitted telling appellant that he would sell him the cattle "provided I can get my lease extended." Appellant was also requiring that the cattle be inspected for Brucellosis before being delivered to his ranch. Appellee was of the belief that if any of the cattle tested positive for this disease the only requirement would be that he hold the herd for sixty or one-hundred and twenty days and retest. Appellee also admitted that he would have to talk with the other partners as to when the last payment was to be made. No discussions were had as to where the risk of loss would fall while the cattle were being held in Menard County nor where delivery was to be made.

During the course of the day, although the exact time is in dispute, appellant made certain notes indicating prices of various "classes" of cattle, the number of cattle and when payment was to be made, on the back of a printed inventory sheet supplied to him by the appellee. No mention of the lease or testing of the cattle was made in the notes. A copy of these notes was given to appellee some time during the day.

In appellant's oral deposition, portions of which were read into evidence at this hearing, he admitted that he knew appellee's lease was running out on the Bevans Ranch and that he was aware that, because of this deal, appellee would have to renegotiate the lease. Before leaving the Bevans Ranch, the parties stopped at the home of Mrs. Bevans. Appellee testified that the purpose of this visit was to renew the lease on the ranch for another year. He also stated that he took the appellant's notes into Mrs. Bevans' home as evidence that a deal had been negotiated. No lease was entered into at this time, however, because Mrs. Bevans had to have "time to think about it." Appellee testified that a new lease was entered into the following day and that this was communicated to appellant on June 20. Appellee testified that he would not have renewed this lease but for the representations made by appellant. He alleged that he had a firm offer from another party to purchase at least a substantial part of the herd but that he cancelled this offer after talking with appellant.

Appellee stated that after he renewed the lease he "guaranteed" the sale of the cattle to appellant. On recross, appellee admitted that after returning to San Antonio and while at the hotel where appellant was staying, more discussions took place and that appellant offered to give him a check for $50,000 to bind the agreement. The offer was refused because appellee stated he could not guarantee that he could "conform" because of the lease situation. His testimony reflects

Q: Is it a fair statement to say that you didn't have an agreement on the 18th?

A: I didn't have an agreement, no, I didn't have an agreement. I didn't have a lease. I mean, that's—or an agreement either.

1. Appellant was seeking to purchase approximately 300 head of cattle. The ranch in Menard had in excess of 500 head and appellant examined approximately 75% of some 220 head in three separate pastures.

Q: Okay. You didn't have an agreement on the date that this was written, the agreement that you say you have now came into being some time later, a day or so later?

A: Well, the way I—when a fellow tells me I'm going to buy your cattle, I don't give a darn what day it is, I take it—take him for his word.

Q: I think you testified you were in Bexar County and you called him up and told him you had renegotiated the lease and therefore you had an agreement at the time?

A: That's right, on the 20th.

Appellee further testified that there was some discussion of the execution of a formal contract but he stated that it was only to include the terms for the delivery and the testing of the cattle by a veterinarian. He insisted that it had nothing to do with the sale. In a letter written to appellant, appellee wrote

As you probably know, Wayne, I have not received your down payment on these cattle to date on the agreement that you were supposed to mail sometime ago and that you probably know that I have leased the Menard Ranch for another year in order to accommodate you and your cattle in this deal.

Appellant testified that while there was an agreement as to certain terms, and a representation that he would purchase the cattle, a formal contract was anticipated and he had told appellee he would have one drawn up in Houston and delivered to appellee in San Antonio. Appellant had delivered a check for the down payment on the cattle to his attorney, however, it was never forwarded. On July 3rd or 4th, appellant contacted appellee's wife and told her that he was having difficulties closing his ranch deal and that if they had another buyer for the cattle to go ahead and sell. Two days later, appellee contacted appellant and was told of appellant's difficulties. It was approximately one month later that appellant told appellee the deal was completely off.

Appellee's exhibit one was introduced into evidence at the plea of privilege hearing. This document was the paper containing the number of cattle, their price and the date for payment which was written sometime during the day on which all the parties were at the Bevans Ranch. It was conceded that this exhibit was not wholly in the handwriting of appellant. Certain figures had been added at the bottom and some had been altered. In appellee's original petition it was alleged that this exhibit constituted the contractual agreement between the parties and that it was executed and performable in Menard County.

Further, and in the alternative, this petition set out that in connection with this transaction

[Appellant] falsely represented to [appellee] that he would purchase the cattle in question, said false representations being made by [appellant] with the intention of inducing [appellee] to sell said cattle. [Appellee] had the right to rely upon the representations of [appellant], not knowing the same to be false, and [appellee] did, in fact, rely upon the false representations, statements, actions and conduct of [appellant] to its detriment. That all of said false and fraudulent statements, representations, actions and conduct of [appellant] were material, and the same were committed in Menard County, Texas, to the detriment of [appellee]. That [appellee] is therefore entitled to recover both actual and exemplary damages of and from the [appellant] herein.

At the trial on the plea of privilege, appellant's deposition was read into evidence

Q: [by appellee's counsel] So you did not at that time have a present intention on the ground in Menard to buy the cattle? You were going to think about it, writing a contract and so on?

A: That's true.

The court, upon the close of final arguments and in ruling upon the plea of privilege, stated

All, right. The court will find that there was an agreement between the [appellee] and the [appellant], or the [appellee] Fit-

zhugh and the [appellant], in Menard County, prior to the time that Mr. Fitzhugh talked to his landlord, to buy, and the [appellant] knew that the [appellee] was relying on that agreement to get the lease extended. That the [appellant], at that time, knew that there was a possibility he would not buy that cattle and did not advise the [appellee] of such doubt and that the [appellee] relied upon that agreement to his detriment and I will deny the motion for the plea of privilege. If you will prepare an order and submit it to counsel.

Appellant brings forth five points of error. In appellant's first three points of error he contends that the trial court erred in sustaining venue under Tex.Rev.Civ.Stat. Ann. art. 1995 subd. 7 because the appellee's pleadings and evidence were insufficient to allege and make out a case of fraud. In his next two points of error he contends that there was no evidence to fix venue in Menard County under Tex.Rev.Civ.Stat.Ann. art. 1995 subd. 5(a) or 5(b).

We sustain all of appellant's points of error.

■ Tex.Rev.Civ.Stat.Ann. art. 1995 subd. 7 (Vernon 1964) provides: "In all cases of fraud ... suit may be brought in the county where the fraud was committed ... or any of such suits may be brought where the defendant has his domicile." In order to overcome a plea of privilege by relying on the fraud exception, a party must plead and prove the constituent elements of fraud. In *Wilson v. Jones*, 45 S.W.2d 572, 573 (Tex.Comm.App.1932, holding approved), the general rule was announced that

> To constitute actionable fraud it must appear: (1) That a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. Each of these elements

must be established with a reasonable degree of certainty, and the absence of any one of them will prevent a recovery.

Quoted with approval in *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas,* 516 S.W.2d 138 (Tex.1974); *Oilwell Division, United States Steel Corp. v. Fryer,* 493 S.W.2d 487 (Tex.1973).

■ These elements, however, relate to alleged fraudulent statements concerning an existing fact. Where the statements said to have been fraudulent are in the nature of a promise of an act to be performed in the future such statement cannot be legally said to be a fraudulent misrepresentation unless it is alleged and proved that at the time the statement or promise was made the person making it did not intend to perform it. *Morgan v. Box,* 449 S.W.2d 499, 504 (Tex.Civ.App.—Dallas 1969, no writ). *See also Precision Motors, Inc. v. English,* 517 S.W.2d 371, 372 (Tex.Civ.App. —Beaumont 1974, no writ); *Brooks v. Parr,* 507 S.W.2d 818, 819 (Tex.Civ.App.—Amarillo 1974, no writ); *Underwood v. Williams,* 488 S.W.2d 515, 518 (Tex.Civ.App.—Fort Worth 1972, no writ).

■ The alleged fraudulent statement in the case at bar refers to a promise of an act to be performed in the future, to-wit, to purchase cattle. There is no allegation in the petition that appellant intended, at the time he made the alleged promise, not to carry it out. Further, there is no allegation that when appellant made the alleged false representation that he *knew* it was false or made it recklessly without any knowledge of its truth, these being essential elements of a case of actionable fraud concerning a promise to do something in the future. *See Dowling v. NADW Marketing, Inc.,* 631 S.W.2d 726 (Tex.1982).

Even if appellee had pled an actionable case of fraud against the appellant, there was no evidence of fraudulent conduct on the part of the appellant which would fix venue under art. 1995 subd. 7. In order to maintain an action in fraud in a county other than that of the appellant's residence, appellee had the burden of proving that a

fraud did occur, that the fraud was committed by the appellant, and that the fraud occurred in the county in which the suit was filed. *See Ryan Mortgage Investors v. Lehmann,* 544 S.W.2d 456 (Tex.Civ.App.—Beaumont 1976, writ dism'd). There is no evidence that appellant did not intend to perform when he made the alleged representation to buy the cattle. Appellee argues that in the appellant's oral deposition, which was read into evidence at the trial without objection, he admitted a lack of present intention on June 18, 1980, to perform or carry out the representations and promises made to appellee. This portion of the deposition reads

Q: So you did not at that time have a present intention on the ground in Menard to buy the cattle? You were going to think about it, think about writing a contract and so on?

A: That's true.

This was a multifarious question and from appellant's answer there is no way to detect if appellant was responding to his intention to write a contract or to buy the cattle. This cannot supply the evidence needed to prove the essential element of the lack of present intent to perform. The evidence was uncontroverted that upon reaching the hotel in San Antonio, appellant offered to tender a check for a portion of the down payment of the cattle, but appellee refused it. Appellee testified to this fact. It was also established that appellant had contacted his attorney in Houston upon returning from the Bevans Ranch. He had tendered a check to him for the down payment on the cattle to be sent to appellee in Bexar County. This evidence tends to vitiate the argument that appellant had no intent to perform.

Furthermore, appellee testified that there was no agreement on June 18, the day the parties were in Menard. He admitted that he could not guarantee the sale while the parties were on the ranch in Menard County because he had not negotiated a renewal

of the lease.[2] Appellant was aware of this and any intent he might have had was conditioned upon appellee's ability to sell under the terms negotiated. It was not until June 20th, when appellee was in Bexar County, that he confirmed the renewal of the lease by telephone to the appellant.

After reviewing the evidence in the light most favorable to the trial court's finding, considering only the evidence and inferences which support it and rejecting the evidence and inferences to the contrary, we hold that the evidence failed to establish that appellee pleaded and proved a cause of action for fraud. There was no evidence to establish an essential element of actionable fraud, that is, the lack of a present intent not to perform. There was also no evidence to establish that the alleged fraud occurred in Menard County.

By his points of error four and five appellant contends that the trial court erred in overruling his plea of privilege based upon art. 1995 subd. 5(a) and/or 5(b). We sustain these points.

The pertinent portions of subd. 5 state: 5. Contract in writing—(a) Subject to the provisions of Subsection (b), if a person has *contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein,* by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile. (b) In an action founded upon a contractual obligation of the defendant to pay money arising out of or based upon a consumer transaction for goods, services, loans, or extensions of credit intended primarily for . . . agricultural use, suit by a creditor upon or by reason of such obligation may be brought against the defendant either *in the county in which the defendant in fact signed the contract,* or in the county in which the defendant resides at the time of the commencement of the action. . . . [Emphasis added.]

2. Appellee testified as follows:
"I said, Wayne, I don't—I will sell them to you provided I can get my lease extended and my lease was up on July 10."

Tex.Rev.Civ.Stat.Ann. art. 1995 subd. 5 (Vernon Supp. 1981).

Appellee concedes in his brief that subsection 5(b) is "the dominant and controlling subsection." He asserts that appellant, as a cattle rancher, is a consumer within the statute and that appellant prepared and delivered to appellee a "contractual obligation" to pay money arising out of an extension of credit for agricultural use. We do not find it necessary, in this case, to decide whether appellant is a consumer contracting to pay money arising out of an extension of credit for agricultural use.

■ In order to come within the exception of subd. 5(a), appellee was required to prove a contract in writing designating a particular county or a definite place within the county for performance of the obligation. *See Flournoy Production Co. v. Kain,* 626 S.W.2d 850, 852 (Tex.App.—San Antonio 1981, no writ). For the exception of subd. 5 to apply, the written agreement must *expressly name* the county of performance or a definite place therein. *Harkness v. Employers Nat'l Ins. Co.,* 502 S.W.2d 670 (Tex.1973); *Midcon Pipeline Equipment Co. v. Smith,* 623 S.W.2d 166, 168 (Tex.App. —Fort Worth 1981, no writ). We are not permitted to *imply* from the contract that it obligates performance in a particular place. *See Saigh v. Monteith,* 147 Tex. 341, 215 S.W.2d 610, 613 (1948); *Midcon Pipeline Equipment Co. v. Smith, supra,* at 168.

■ In this case the appellee did not prove and offer into evidence a contract in writing which would require that an obligation be performed in Menard County. The alleged contract, attached to the appellee's original petition and controverting affidavit to the plea of privilege, did not expressly name the county of performance or a definite place therein. Subdivision 5(a) is therefore inapplicable.

■ Under subd. 5(b), a suit on a consumer transaction may be maintained only in the county in which the appellant "in fact signed the contract," or in the county in which he "resides at the time of the commencement of the action." *See*

*Boettcher v. Piney Woods Tractor & Implements, Inc.,* 622 S.W.2d 612, 613 (Tex.App. —Beaumont 1981, no writ). This subdivision is inapplicable because appellant's signature was never affixed to this alleged contract. Appellee argues that there should be no requirement for a signature when the party charged concedes that the obligation was prepared in his own hand. This, however, is not the case. It was conceded by both parties that the alleged contract was not solely in appellant's own handwriting. Appellee admitted to adding figures at the bottom of the paper. There were also alterations of some of the figures which appellant denied making and which were attributed to no identified party.

The statute is specific and unambiguous in requiring that the appellant sign the contract in the county where suit is brought. Without appellant's signature on the alleged contract, subd. 5(b) is inapplicable.

The denial of the plea of privilege was not supported under subdivisions 5(a), 5(b), or 7. We hold, therefore, that the trial court erred in failing to grant it. The judgment is reversed and remanded, with instructions to transfer this case to the District Court of Harris County, appellant's county of residence.